**AIRD INSURANCE AGENCY, a Utah Corporation, Plaintiff and Appellant,**

v.

**ZIONS FIRST NATIONAL BANK, Defendant and Respondent.**

No. 16539.

Supreme Court of Utah.

May 22, 1980.

Clifford V. Dunn, Salt Lake City, for plaintiff and appellant.

Gifford W. Price of Callister, Greene & Nebeker, Salt Lake City, for defendant and respondent.

HALL, Justice:

Plaintiff appeals from the summary judgment which dismissed its action against defendant. There having been no evidence taken below, the following facts are gleaned from the pleadings, depositions, and other submissions on file.

Plaintiff is an independent insurance agency organized and operating under the laws of Utah. Early in 1974, plaintiff was contacted by Mr. David L. Fitzen, a licensed construction contractor. Mr. Fitzen had entered into a contract with the State of Idaho pertaining to a construction project in the city of Rigby. Fitzen sought plaintiff's assistance in securing a performance bond in the amount of $17,932.00, as required by Idaho law. Transamerica Insurance Company, for whom plaintiff regularly acted as agent in the Salt Lake area, agreed to issue the bond, but required collateral in the form of a cash deposit. To this end, Fitzen negotiated a loan with defendant, which loan proceeds were deposited in a passbook savings account with defendant. On January 31, 1974, Fitzen signed a document drafted by Transamerica which, on its face, purported to effect an irrevocable and absolute assignment of the passbook, together with all rights appertaining thereto to Transamerica. The performance bond itself issued separately on February 4, 1974, and was supported by the additional consideration of the premium paid therefor.

Correspondence relating to the project undertaken by Fitzen indicates that work thereon was completed in July of 1974, with

full payment made on August 10, 1974. The bond document on file with Transamerica was marked "cancelled" on its face as of 1975.

In October of 1974, the loan extended Fitzen by defendant went into default. Defendant resolved to set off the funds in the passbook account against this obligation. The account had contained no funds other than the loan proceeds, with the exception of interest which had accrued during the period of the loan.

In September of 1977, a Transamerica officer, Ben M. Watnes, pursuant either to communications with the State of Idaho or to an inventory check of collateral held by the company, resolved that the bond had been satisfied and that Transamerica no longer held interest in the passbook. He therefore contacted plaintiff to propose a release of the account to Fitzen. Plaintiff urged that the release be delayed, as Fitzen was allegedly indebted to it in a manner evidently unrelated to the performance bond or the passbook account.

Thereafter, on October 5, 1977, plaintiff obtained a judgment against Fitzen on the unrelated obligation. In an effort to satisfy the judgment, plaintiff served Transamerica with a writ of garnishment on the passbook. An investigation then revealed that the account had been virtually depleted since the end of 1974 when defendant set off the funds therein against Fitzen's loan obligation. Plaintiff then negotiated an assignment of all interest in the passbook held by Transamerica.

Thereafter, plaintiff filed the present action, asserting title to the passbook account and the funds initially deposited therein by virtue of the assignment from Transamerica. Plaintiff, in its complaint, asserted that, notwithstanding the fact that the passbook had been given as collateral to secure the bond obligation, it was in effect an absolute assignment creating irrevocable rights in Transamerica (and in plaintiff as

assignee), such that defendant's setoff was improper.

In granting summary judgment, the trial court concluded in its Memorandum Opinion that, notwithstanding the absolute language of the assignment, Transamerica's right to withdraw any funds from the account was contingent upon a legitimate claim being made upon the bond; none having been made, Transamerica had no further right to possession or use of the account; and, therefore, plaintiff gained nothing by virtue of the assignment thereof.

On appeal, plaintiff contends the trial court erred in three respects: (1) in not granting summary judgment in its favor; (2) in basing its judgment upon irrelevant and immaterial evidence; and (3) in granting summary judgment at all, since material issues of fact remain unresolved. We address only the latter since it comprises the basic and dispositive issue.

A motion for summary judgment[1] permits an excursion beyond the pleadings, and if the facts discovered irrefutably disprove facts pleaded, summary judgment is appropriate.[2]

In the instant case, the pleadings, answers to interrogatories, and depositions disclose undisputed facts which permit the resolution of this controversy as a matter of law,[3] and it was therefore appropriate for the trial court to enter summary judgment.

Plaintiff's theory of the case is that, as assignee-in-interest of Transamerica, it is the bona fide owner of the account, against which defendant had no right to set off a debt owed by a third party. The theory is based on the absolute language of the assignment to Transamerica and on Transamerica's subsequent letter request that it be treated as the owner of the account. Plaintiff then takes the inconsistent position that the trial court erred in considering the underlying contractual agreements

---

1. Provided for by Rule 56(c), U.R.C.P.

2. *Continental Bank & Trust Co. v. Cunningham*, 10 Utah 2d 329, 353 P.2d 168 (1960).

3. *Rich v. McGovern*, Utah, 551 P.2d 1266 (1976).

which supported the issuance of the performance bond by Transamerica to Fitzen.

Although plaintiff does not invoke the parol evidence rule, such is a matter for our consideration since the character of Transamerica's interest as a security interest is derived only from statements and documents of the assignment itself.

It appears, on even a cursory examination of the record before us, that the writing effecting the assignment to Transamerica was not fully integrated as a statement of the intent of the parties. The deposition of Ben M. Watnes,[4] all correspondence, and, indeed, plaintiff's own pleadings characterize the said assignment as a security device. As such, the absolute language of the document of assignment was only a part of the agreement, the remainder of which considerably limited the interest held by Transamerica. As a necessary consequence, the parol evidence rule does not bar the consideration of other statements and writings which formed a part of the total agreement.

Mr. Watnes further testified by way of deposition that he had reviewed the status of the Fitzen bond in September, 1977, and determined that Transamerica had no further interest therein since Fitzen had fulfilled his construction contract obligation. He also acknowledged that "the only person according to my records who would have an interest in the savings passbook would be Mr. Fitzen," and that by October 5, 1977, he became aware of the offset of the account by defendant.

Transamerica's assignment to plaintiff dated March 13, 1978, was in the nature of a quit-claim, and without monetary consideration, the consideration being designated as "mutual business relationships."[5]

It is apparent that Transamerica had only a security interest in the account which had long since been satisfied, and since an assignee gains nothing more, and acquires no greater interest than had his assignor,[6] plaintiff here acquired nothing by virtue of the assignment in question.

A pledge of security affords rights in the pledgee only to the extent that the secured obligation may become in default. Moreover, the nature of the obligation secured is a function of the agreement between the parties. The present security interest, by undisputed evidence, extended only to the performance bond issued by Transamerica. No future advances were stated, and certainly there was no reference made to any and all obligations ever held against Fitzen by Transamerica or its assignees. As such, Transamerica's interest only permitted it to move against the account in the event of a default on the bond. Again, it is undisputed that the construction project was satisfactorily completed within six months time of the issuance of the bond. Satisfaction of an obligation secured by a pledge terminates, as a matter of law, the pledgee's rights in the collateral. Such termination is inherent in the definition of a security interest.[7] Transamerica's interest having terminated before Fitzen ever defaulted on his loan, defendant moved against funds in the account now solely owned by Fitzen, Transamerica merely holding the account passbook without right, which might be likened to a constructive trust.

Affirmed. Costs to defendant.

CROCKETT, C. J., and MAUGHAN, WILKINS and STEWART, JJ., concur.

---

4. Transamerica's bond underwriting manager.

5. Apparently arising from the long-time agency relationship of plaintiff with Transamerica.

6. *Cheney v. Rucker*, 14 Utah 2d 205, 381 P.2d 86 (1963); *Tanner v. Lawler*, 6 Utah 2d 84, 305 P.2d 882 (1957).

7. See *First Security Bank of Utah, a National Association v. Utah Turkey Growers, Inc.*, Utah, 610 P.2d 329 (1980).