Jamey J. TOOMB, Plaintiff
and Appellant,

v.

Robert D. HEPWORTH, ERA Swallow
Realty, Inc., The Estate of Q. Cannon
Lambert, Defendants.

ERA SWALLOW REALTY, INC. and
Robert D. Hepworth, Defendants and
Third-Party Plaintiffs and Respon-
dents,

v.

Marsy WOODWARD,
Third-Party Defendant.

No. 860011–CA.

Court of Appeals of Utah.

May 26, 1987.

Jeffrey M. Jones, Richard K. Hincks, Nielsen & Senior, Salt Lake City, for defendants and third-party, plaintiffs and respondents.

Tim Dalton Dunn, Theodore E. Kanell, Hanson, Dunn, Epperson & Smith, Salt Lake City, for plaintiff and appellant.

Before ORME, DAVIDSON and GARFF, JJ.

## OPINION

DAVIDSON, Judge:

The District Court granted defendants' Motion for Summary Judgment from which plaintiff appeals asserting there exist issues of material fact which should have been submitted to the trier of fact.

Plaintiff is the purchaser and record owner of a residence located at 2204 Fisher Lane, Salt Lake City, Utah. Plaintiff discovered this property in a multiple listing book published by the Salt Lake Board of Realtors which was in the possession of her mother, a real estate agent. Defendants Hepworth and ERA Swallow Realty, Inc. were listing agent and broker, respectively, for the prior owners. Defendant Hepworth prepared the multiple listing for the prior owners and sellers, Q. Cannon Lambert and Bertha B. Lambert. Among the numerous representations concerning the residence shown in the multiple listing were that the property area consisted of 1.00 acre, the residence contained 3,882 square feet of floor space, the dimensions of the living room were 20 feet by 30 feet, there was a patio, and the previous year's property taxes were $952.00.

Plaintiff and her husband Gary first viewed the residence on or about June 15, 1981. Defendant Hepworth did not accompany the couple who were initially shown the property by Mr. Lambert. During this visit plaintiff and her husband walked through the living room, observing its size, and also noticed a water spot in the ceiling of an upstairs bedroom. Mr. Lambert is asserted to have said that he would repair the leak responsible for the water damage and did in fact hire a roofer to make repairs.

The following day, the Toombs again viewed the residence. Defendant Hepworth accompanied the couple as did plaintiff's parents. An offer to purchase the property was made the next day, on June 17, 1981, with the closing taking place on August 28, 1981.

Plaintiff's amended complaint alleged that the property purchased consisted of .81 acre, the residence contained 3,665 square feet of floor space, the dimensions of the living room were twelve feet ten inches by twenty-eight feet two inches, there was no enclosed patio, and the property taxes were $1,065.07. It was also alleged that the property was held out to be in good repair and the leak in the roof would be fixed by the seller. Plaintiff claims that defendants Hepworth and ERA Swallow Realty, Inc. made the above misrepresentations either knowing they were false; or recklessly, knowing they had insufficient knowledge upon which to base their representations; or negligently, by failing to use reasonable care or competence by obtaining or communicating the correct information. Plaintiff asserts she relied on the foregoing misrepresentations in purchasing the property.

When considering the defendants' Motion for Summary Judgment, the trial court had before it the depositions of plaintiff, her husband and defendant Hepworth, defendants' memorandum in support of the motion, and plaintiff's memorandum in opposition to the motion.

Utah R.Civ.P. 56(c) establishes the procedure and standard relative to the motion at issue. The motion sought shall be rendered if the proper documentation shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Utah R.Civ.P. 56(e) requires an adverse party not to rest upon his pleadings but his response must set forth "specific facts showing that there is a genuine issue for trial." As stated, the depositions of the Toombs were before the trial court.

Utah case law relating to summary judgment is voluminous. Pertinent to this ap-

peal are *W.W. & W.B. Gardner, Inc. v. Mann,* 680 P.2d 23, 24 (Utah 1984) (summary judgment is a harsh measure and opposing party's contentions are to be considered in a light most advantageous to him); *Snyder v. Merkley,* 693 P.2d 64, 65 (Utah 1984) (summary judgment should only be granted when it clearly appears there is no reasonable probability the opposing party could prevail); *Aird Ins. Agency v. Zions First Nat. Bank,* 612 P.2d 341, 343 (Utah 1980) (a motion for summary judgment permits an excursion beyond the pleadings, and if the facts discovered irrefutably disprove facts pleaded, summary judgment is appropriate); and *F.M.A. Financial Corporation v. Build, Inc.,* 17 Utah 2d 80, 404 P.2d 670, 673 (1965) (mere dispute as to some question of fact does not preclude the granting of summary judgment because an issue in dispute must be material in the sense that its resolution is necessary to determine the parties' legal rights.)

Particularly appropriate to an analysis of the instant case is the Utah Supreme Court's holding in *Clegg v. Lee,* 30 Utah 2d 242, 516 P.2d 348 (1973). There the Court wrote that if the real estate purchaser's deposition refuted his allegations that the real estate contract was entered into on the basis of fraud and misrepresentation, that purchaser could not rely on his pleadings to avoid summary judgment. Besides the Toombs' depositions, plaintiff relies on her memorandum in opposition to the motion which essentially recites what was contained in the amended complaint.

■ The appropriate question is whether the Toombs relied on the representations made by the defendants in the multiple listing in making their decision to purchase. The residence was alleged to be 3,882 square feet but in fact was 3,665. However, the Toombs viewed the home twice before they made their offer to the Lamberts. Critical to this issue and others is Gary's answer at page 80 of his deposition. When questioned about his reliance on the information concerning the size of the living room on the multiple listing form, he stated:

Okay, let's start over, okay. Number one, we looked at the card and we saw 3,800 square feet in the house, okay. Then we went through the house, and I just—I was really not concerned about the house because if she liked it, and there was some deficiencies that needed to be changed, I can do it, so I figured, fine, if it will suit her needs, fine, we can make it whatever we need, I can put it in.

■ Plaintiff, when questioned about the living room, stated at page 24 of her deposition that "it looked big" and repeated the comment when asked if the room was large enough for her needs. This hardly appears to be the answer of one who had walked through the living room twice but is now claiming she relied on someone else's representations of size.

■ Defendant Hepworth, in his deposition, stated there were two areas which might be considered patios. There was some question as to what constituted a patio in the real estate industry. The parties examined the property twice before purchasing. They must be presumed to have seen what was there. They cannot now claim damages arising from what they saw and accepted.

■ Plaintiff cannot claim she relied on the annual property tax being $952.00. Mrs. Toomb signed the Buyers Settlement Statement at closing on August 28, 1981, which clearly indicates this tax to be $1,100.87. Again, she must be presumed to have seen what was on the statement. The initial information plaintiff received might have shown the tax to be a lower amount than it was in reality but the later clarification dispelled any doubt that she could rely on the $952.00 figure depicted on the multiple listing form.

■ Plaintiff cannot claim that she relied on the residence being in a good state of repair. At pages 22 and 23 of her deposition she clearly indicates her desire to impress her parents with what she could accomplish with the residence in the condition as initially viewed. Mrs. Toomb described her mother's opinion of the property as an "absolute disaster." Mr. Toomb admitted

that defendant Hepworth never verbally represented the property as being in a state of good repair. When asked to describe the "apartment" portion of the residence, Mr. Toomb stated that it was "atrocious." These statements by the couple reflect an opinion which is at odds with plaintiff's assertion that she relied on the defendants' claim of the property being in good repair.

■ Mr. Toomb's deposition does appear to raise the issue as to what degree plaintiff relied on the property being 1.00 acre. Although it is not absolutely clear from the couple's depositions, the potential for the property's development seems to be directly dependent on it being an acre or more in area. Mr. Lambert appears to have discussed this point with Mr. Toomb. After taking possession, the Toombs discovered they had received .81 acre instead of 1.00 acre as represented. Earlier in this proceeding, the Toombs succeeded in obtaining title to a contested strip of land which gave them the full 1.00 acre they desired. This leaves questions about representations made about the size of the lot, the Toombs' reliance thereon in making the purchase, and any damages which may have been incurred by the necessity of bringing action to recover the contested strip.

When reviewing the Toombs' depositions with the pleadings, we affirm summary judgment on all issues with the exception of the Toombs' possible reliance on statements of the property being 1.00 acre in size. This issue is remanded to the trial court to determine if there was such reliance and, if so, did plaintiff suffer any damages as a result thereof.

ORME and GARFF, JJ., concur.