2010 UT 6

**SUNRIDGE DEVELOPMENT CORPO-
RATION and Sunridge Enterprises,
LLC, Plaintiffs and Petitioners,**

v.

**RB & G ENGINEERING, INC.,**
Defendant and Respondent.

No. 20080160.

Supreme Court of Utah.

Feb. 5, 2010.

Stephen Quesenberry, Charles L. Perschon, Provo, for plaintiffs.

Craig C. Coburn, Lincoln Harris, Zachary E. Peterson, Salt Lake City, for defendant.

NEHRING, Justice:

## INTRODUCTION

¶ 1 In this case we address the legal relationships created by an assignment. In particular, we examine the scope of an assignee's right to recover damages from a third party that breached a contract made with, or duty owed to, the assignor. Respondent RB & G, an engineering firm, persuaded a majority of the court of appeals that while it may have breached a contract or duty before the key assignment occurred, the assignee could not recover damages sustained after the date of the assignment. Petitioners Sunridge Development Corporation and Sunridge Enterpris-

es, LLC, argue that an assignee may recover damages that flow from a breach of an assigned contract regardless of when the actual damages occur. We reverse the court of appeals and remand to the district court.

## BACKGROUND

¶ 2 In the 1960s, Stephen Stewart formed Sunridge Development Corporation (SDC). In 1981, SDC purchased a parcel of property in Provo, Utah, for the purpose of developing the property into Alpine Brook, a residential development. In 1993, SDC contracted with RB & G Engineering, Inc., a geological engineering firm, to obtain a geologic study of the property. SDC commissioned another geologic report from RB & G in 1995. The two reports describe geologic features of the property, make recommendations for foundation design, and include depictions of the subdivision and the planned units.

¶ 3 In 1996, Mr. Stewart formed Sunridge Enterprises, LLC (Enterprises).[1] Mr. Stewart was the principal of Enterprises, which was the entity that took on the responsibility for developing the Provo property into Alpine Brook. Development of the property then commenced. Mr. Stewart made a statement in a deposition suggesting that when he formed Enterprises, SDC transferred the property and made certain assignments to Enterprises, including an assignment of all rights and claims under the RB & G reports. The documents evidencing the development agreement, transfer of the property, and assignment are not a part of the record in this case.

¶ 4 In 1998, the Utah Geologic Survey, a division within the Department of Natural Resources, sent Provo City a letter expressing its concern that the RB & G reports did not adequately address the seriousness of the geologic faults on the property. Provo City responded to the Survey's concerns by requiring Enterprises to expand setbacks within the Alpine Brook development to mitigate the risks associated with the faults. By the time Provo City mandated these changes, Enterprises had completed the design of certain portions of the development. The site

1. The court of appeals' opinion refers to Sun-    ridge Enterprises, LLC as "SEL."

revisions required by Provo City resulted in a loss of fourteen units, amounting to a claimed loss of over one million dollars. Delays in development, redesign, and attorney fees resulted in additional costs.

¶ 5 Petitioners claim that RB & G failed to notify SDC and Enterprises of the geologic condition of the site in the reports. In early February, SDC sued RB & G for breach of contract and negligence. SDC later amended its complaint to include Enterprises as a plaintiff. SDC and Enterprises sought to recover for the loss of the fourteen units as well as additional "administrative costs," which included the costs of delay, redesign, and attorney fees. As discovery progressed, RB & G moved for summary judgment on SDC's negligence claims and Enterprises' breach of contract and negligence claims. The district court granted summary judgment against both SDC and Enterprises on their negligence claims, concluding that the economic loss rule barred any recovery in negligence. The court also granted summary judgment against Enterprises on its breach of contract claim. The court reasoned that Enterprises could not recover damages from RB & G because it could not stand in a better position than its assignor, SDC. The court explained that because RB & G had fully performed its contracts with SDC, the assignment only transferred SDC's rights to pursue remedies for existing, not future, breaches of those contracts. Therefore, because the loss of the fourteen units occurred after the assignment, Enterprises could not recover those damages from RB & G because SDC never had the right to recover such damages. The court further concluded that the assignment did not establish privity between Enterprises and RB & G or otherwise entitle Enterprises to pursue its alleged damages.

¶ 6 A year later, RB & G moved for summary judgment on SDC's remaining breach of contract claims, which sought recovery for the "administrative costs." The district court granted summary judgment to RB & G because SDC had not supported its damage summary with evidence eligible for consideration by the court under Utah Rule of Civil Procedure 56(c) before the discovery period closed. The parties agreed not to appeal the second summary judgment of SDC's breach of contract claims.

¶ 7 Petitioners appealed the first summary judgment and the case was transferred to the Utah Court of Appeals. Specifically, Petitioners argued that Enterprises could recover as an assignee of the RB & G reports for damages that occurred after the assignment and/or that SDC could recover in negligence. The court of appeals declined to address the merits of the appeal. Instead, the court of appeals held that because SDC's contract damages were dismissed on summary judgment, Enterprises could not recover as an assignee because " 'an assignee gains nothing more, and acquires no greater interest than had his assignor....' " *Sunridge Dev. Corp. v. RB & G Eng'g, Inc.*, 2008 UT App 29, ¶ 8, 177 P.3d 644 (quoting *Aird Ins. Agency v. Zions First Nat'l Bank*, 612 P.2d 341, 344 (Utah 1980)). The court of appeals reasoned that Enterprises was subject to SDC's failure to timely present evidence of the damages at issue in the second summary judgment because "assignment merely allows the assignee to stand in the shoes of the assignor." *Id.* ¶ 9. Judge Bench dissented. He reasoned that "[al]though an assignee's damages are limited to those damages the assignor would have suffered, the assignee should not be required to depend upon the assignor to litigate on its behalf." *Id.* ¶ 15 (Bench, J. dissenting). Judge Bench noted that a determination of Enterprises' rights, if any, to pursue claims under the RB & G contracts needed to be addressed before analyzing any effect the second summary judgment might have had on Enterprises. *Id.*

¶ 8 We granted certiorari to determine whether the majority of the court of appeals' panel erred in its assessment of the effect of the judgments rendered by the district court. We have jurisdiction pursuant to Utah Code section 78A–3–102(3)(a) (2008).

## STANDARD OF REVIEW

¶ 9 On certiorari review, we review the decision of the court of appeals, not the decision of the district court. *See Massey v. Griffiths*, 2007 UT 10, ¶ 8, 152 P.3d 312.

## ANALYSIS

¶ 10 The parties have briefed two issues: (1) whether Enterprises can recover any damages resulting from the required redesign of Alpine Brook as an assignee of the RB & G contracts and (2) whether SDC can recover similar damages in negligence despite the economic loss rule.[2] We address each issue in turn.

## I. AN ASSIGNMENT DOES NOT NECESSARILY PRECLUDE AN ASSIGNEE FROM RECOVERING DAMAGES FOR CLAIMS THAT ARISE AFTER THE ASSIGNMENT

¶ 11 Before we discuss an assignee's rights against a third party that owed duties to the assignor, we first note that the court of appeals erred when it held that SDC's procedural errors in proving its contract damages absolutely barred Enterprises' ability to recover as an assignee of the RB & G reports.[3] While it is correct that an assignee stands in the shoes of its assignor and cannot stand in a better position than its assignor, an assignee should nevertheless be given the chance to fully and fairly litigate the rights it claims to have acquired by assignment. The opportunity to litigate its own rights allows the assignee to demonstrate the rights of the assignor and defend against any limitations on the effect of the assignment alleged by the third-party obligor.

¶ 12 We now move to the merits of Enterprises' argument that it can recover from RB & G as an assignee, a task that requires a brief detour into the law of assignments generally, as well as an analysis of a central assignment case, *SME Industries, Inc. v. Thompson, Ventulett, Stainback and Associates, Inc.*, 2001 UT 54, 28 P.3d 669.[4]

### A. Basic Assignment Law

¶ 13 It is well recognized that "[t]he assignee [stands] in the shoes of the assignor." 9 John E. Murray, Jr., *Corbin on Contracts* § 51.1 (rev. ed. 2007). Therefore, " '[t]he assignee is subject to any defenses that would have been good against the [assignor]; the assignee cannot recover more than the assignor could recover; and the assignee never stands in a better position than the assignor.' " *SME Indus.*, 2001 UT 54, ¶ 16, 28 P.3d 669 (second alteration in original) (emphasis omitted) (quoting 6 Am. Jur. 2d *Assignments* § 144 (1999)). "[A]n assignee gains nothing more, and acquires no greater interest than had his assignor." *Aird Ins. Agency v. Zions First Nat'l Bank*, 612 P.2d 341, 344 (Utah 1980) (citing *Cheney v. Rucker*, 14 Utah 2d 205, 381 P.2d 86, 91 (1963)). In other words, "the common law puts the assignee in the assignor's shoes, whatever the shoe size." *Olvera v. Blitt & Gaines, P.C.*, 431 F.3d 285, 289 (7th Cir. 2005).

¶ 14 The parties, as well as Judge Bench in his dissent, chose the term "privity" to characterize the relationship created between an assignee and an obligor. Therefore, the extent to which an assignment creates a relationship roughly equivalent to traditional notions of privity and the extent to which privity extends to periods both be-

---

2. The court of appeals noted that "[p]er stipulation, Plaintiffs do not challenge the trial court's grant of summary judgment on SDC's breach of contract claim" *Sunridge Dev. Corp. v. RB & G Eng'g, Inc.*, 2008 UT App 29, ¶ 7 n. 3, 177 P.3d 644. Petitioners do not appeal this finding to this court. Petitioners also concede in their brief to this court that "[Enterprises] does not appeal the dismissal of its negligence claims against RB & G, as [Enterprises] and RB & G were in a position to allocate risk and damages by contract (by virtue of the assignment)." Therefore, we only address the two stated issues.

3. We also note that the court of appeals made a factual error when it stated that "[i]n August and September of 2005, the trial court ruled in favor of RB & G on two separate motions for summary judgment." *Sunridge Dev. Corp.*, 2008 UT App 29, ¶ 4, 177 P.3d 644. The two summary judgments at issue were actually issued on August 2, 2005 and September 12, 2006.

4. The court of appeals noted: "For purposes of summary judgment, the parties centered their arguments on the effect of the assignment and not on the underlying validity thereof. At trial, however, [Enterprises] would have the burden of proving the validity of the assignment by a preponderance of the evidence." *Sunridge Dev. Corp.*, 2008 UT App 29, ¶ 3 n. 1, 177 P.3d 644. We agree and note that our opinion assumes a finding of a valid assignment that also assigned the rights and claims asserted by Enterprises.

fore and after the assignment are relevant inquiries.

¶ 15 For guidance on these questions, we look further into the purpose behind the maxim that an assignee stands in the shoes of its assignor. *Corbin on Contracts* states, "[t]he essential purpose of the principle is to protect the obligor, the party who must perform the correlative duty of the assigned right," so that the risk to the obligor is not materially enlarged over the risk created by its agreement with the assignor. Murray, *supra*, § 51.1. In other words, the purpose behind the rule is that an assignee has rights and liabilities identical to those of its assignor. We believe that the relationship between the assignee and obligor is not best characterized as a form of privity, but rather as a continuation of the rights and liabilities of the assignor as evidenced by the assigned agreements and any further limitations stated in the assignment itself.

¶ 16 RB & G argued to the court of appeals and to this court that an assignee cannot recover damages that accrue after the date of the assignment, regardless of whether the cause of action accrued before the assignment, because to permit such recovery would be to place the assignee in a better position than its assignor. RB & G's argument is based on *SME Industries*, 2001 UT 54, 28 P.3d 669. There, we reiterated the rule that an assignee cannot stand in a better position than its assignor. *Id.* ¶ 16. Thus, we now turn to a discussion of *SME Industries* and how it affects the law of assignments.

*B.* SME Industries *Did Not Create a Per Se Rule Linking Recovery to the Time Damages Were Incurred and the Date of the Assignment*

¶ 17 In *SME Industries,* Salt Lake County contracted with TVSA for architectural and design services in connection with the renovation of the Salt Palace Convention Center in Salt Lake City. *Id.* ¶ 2. TVSA then contracted with other design professionals for assistance, as permitted by the SLC/TVSA contract. *Id.* Salt Lake County contracted with Hughes–Hunt to be the general contractor for the project. *Id.* ¶ 3. Hughes–

Hunt then entered into a contract with SME Industries for steel erection work. *Id.* The design of the steel framework was completed by the "design team," comprised of the entities which contracted with TVSA. *Id.* ¶ 4.

¶ 18 SME Industries encountered problems with the design of the steel framework throughout construction, which resulted in delays and spawned change orders. *Id.* SME submitted the costs of these delays to Hughes–Hunt for reimbursement, arguing that "the design team's responses to [SME's requests for information] and change orders were consistently late, were internally inconsistent, conflicted with the plans and specifications, and often failed to address the issues raised by SME." *Id.* ¶ 5. Hughes–Hunt presented SME's claim to Salt Lake County, which in turn presented the claim to the design team for comment. *Id.* ¶ 6. Salt Lake County ultimately rejected the claim, but settled with Hughes–Hunt for $150,000. *Id.* The settlement included an assignment of "all rights, causes of action, and claims" Salt Lake County had against the design team. *Id.* Hughes–Hunt then reached a settlement with SME, paying SME $150,000 and assigning to SME all of its "assigned rights, causes of action, and claims against the design team." *Id.* SME then sued the design team for direct claims as well as the claims Salt Lake County had assigned to Hughes–Hunt and Hughes–Hunt had in turn assigned to SME for *inter alia* breaches of the SLC/TVSA contract. *Id.* ¶ 7.

¶ 19 The district court dismissed SME's breach of contract claim against TVSA because it found the SLC/TVSA contract prohibited assignment. *Id.* ¶ 10. After discussing the effect of an anti-assignment clause in the SLC/TVSA contract, the court briefly addressed the effect of an assignment on a party's ability to recover breach of contract damages. *Id.* ¶ 14. We reversed the district court because it was unclear whether the parties intended to prohibit an assignment of the rights under the SLC/TVSA contract, "or whether the parties also intended to prohibit the assignment of a cause of action seeking money damages for breach of contract after the contract had been fully performed." *Id.* ¶ 15. We then stated that if on remand the

district court determined that the anti-assignment clause did not prohibit an assignment of a claim under the SLC/TVSA contract, "SME's damages, if any, are limited to those damages suffered by the County [the first assignor] as a result of TVSA's alleged breach of the County–TVSA contract inasmuch as SME may recover only what the County could recover from TVSA per the assignment." *Id.* ¶ 16.

¶ 20 We repeated this holding later in the opinion to explain the limitation on the damages SME could recover if it prevailed on its breach of implied warranty claim. We reasoned that

> because SME's implied warranty claim is an assigned claim, SME may not recover the damages *it* suffered as a result of TVSA's alleged breach of the implied warranty to use reasonable and customary care in the performance of contractual duties under the County–TVSA contract. Rather, SME's recovery, if any, is limited to those damages the *County* suffered as a result of TVSA's alleged breach of the implied warranty to exercise reasonable and customary care.

*Id.* ¶ 30.

¶ 21 Having discussed *SME Industries,* we now turn to its application to this appeal. RB & G argues to this court that under *SME Industries,* Enterprises cannot recover damages stemming from the alleged breach of the RB & G contracts because the alleged breach occurred after the assignment from SDC. RB & G argues that the damages claimed from loss of the fourteen units are solely the damages of Enterprises and therefore cannot be recovered.

¶ 22 We cannot adopt such a literal reading of *SME Industries* and find RB & G's reliance on the case misplaced. The holding in *SME Industries* was limited to the effect of an assignment in situations where the assign- or had only assigned a claim under a contract, not assigned all the rights and privileges under a contract. Additionally, in *SME Industries* Salt Lake County had actually accrued damages in the form of $150,000 paid as settlement to Hughes–Hunt *before* it assigned its claims to TVSA.

¶ 23 Because it is factually distinct from this case, we reject RB & G's reading of *SME Industries* and hold that the rule that an assignee cannot stand in a better position than its assignor simply means an assignee cannot recover more than the assignor could have recovered under the assigned contracts.[5] The correct inquiry looks at the assignor's rights and liabilities under the contract, not solely whether a claim for damages arose before or after the date of the assignment.

¶ 24 Our holding today is consistent with our holding in *Spears v. Warr.* 2002 UT 24, 44 P.3d 742 *overruled on other grounds Tangren Family Trust v. Tangren,* 2008 UT 20, 182 P.3d 326. *Spears* involved a purchaser of land who sought the conveyance of certain water rights from the seller. *Id.* ¶ 6. We reasoned that a quitclaim deed operated as an assignment of water rights claims against the original seller of the property. *Id.* ¶ 40. Importantly, the opinion concludes that "the deed assigned [the assignors'] contractual interest in the irrigation water rights," and that "[a]ccordingly, the [assignees] are entitled to bring against the [sellers/obligors] any contractual action the [assignors] could have brought, including the instant claim for the irrigation water rights." *Id.*

¶ 25 In this case, we acknowledge that core facts remain unresolved, most notably, whether an assignment took place and, if so, the nature of its terms. Moreover, the merits of RB & G's statute of limitations defense must be addressed.[6] Additionally, the court

---

5. Were we to impose a time-driven rule on the law of assignment damages, it would produce an absurd result. For example, an assignee sues a third party for an alleged breach of duty to the assignor. In response, the third party claims that if the assignee recovers damages, it would be in a better position than the assignor since the assignor no longer has a claim precisely because it assigned the claim away.

6. Petitioners have indicated that Enterprises' breach of contract action may be barred by the applicable statute of limitations and request this court to apply the discovery rule. Specifically, they argue that the statute of limitations should not begin until Enterprises was informed of the fault-line problems. RB & G disputes the date on which the court should deem the contracts breached. We decline to address this issue be-

of appeals faulted Enterprises for not suing its assignor, SDC, "for conveying [Enterprises] a property allegedly worth over a million dollars less than [Enterprises] paid." *Sunridge Dev. Corp.*, 2008 UT App 29, ¶ 10, 177 P.3d 644. We can discern no relevance in this observation and do not rely upon it in our decision today. This court's scope of review precludes us from addressing the implications of factual disputes that have not been addressed by the court of appeals. Our opinion today is meant to clarify that *SME Industries* does not place a temporal restriction on the damages an assignee may recover. The court of appeals erred when it failed to analyze whether the district court properly considered the relationship between SDC, Enterprises, and RB & G. We therefore reverse the court of appeals and remand to the district court with instructions to apply the rule set forth today.

## II. AS AN ASSIGNEE, SDC CANNOT TAKE ADVANTAGE OF ANY INDEPENDENT DUTY EXCEPTION TO THE ECONOMIC LOSS RULE

■ ¶ 26 Petitioners argue, in the alternative, that SDC should be able to recover the damages suffered as a result of the lost units through a negligence action against RB & G "[s]ince SDC lost its privity with RB & G pursuant to the 1996 assignment."[7] In other words, SDC argues that an engineer who issues a faulty geological report may be liable in negligence despite an absence of damage to other property.

¶ 27 The district court held that the economic loss barred SDC's negligence claim. The court of appeals did not address whether the district court erred in its application of the economic loss rule because it found the dismissal of SDC's contract claims dispositive. *Sunridge Dev. Corp. v. RB & G Eng'g, Inc.*, 2008 UT App 29, ¶ 4 n. 2, 177 P.3d 644.

cause it was not addressed by the district court or the court of appeals and presents questions of fact. Whether the breach of contract claim pleaded by Enterprises was assigned by SDC and whether Development SDC had any knowledge of the breach are factual determinations to be made by the district court.

7. Petitioners do not argue that Enterprises is entitled to recover in negligence, but instead

Because we reverse the court of appeals' treatment of Enterprises' contract claims, we now also address whether the economic loss rule bars SDC's negligence claims.

■ ¶ 28 The economic loss rule serves two purposes. First, it bars recovery of economic losses in negligence actions unless the plaintiff can show physical damage to other property or bodily injury. *See SME Indus., Inc. v. Thompson, Ventulett, Stainback and Assocs., Inc.*, 2001 UT 54, ¶ 32, 28 P.3d 669. Second, the economic loss rule prevents parties who have contracted with each other from recovering beyond the bargained-for risks. *See id.* ¶ 36. In essence, the economic loss rule "marks the fundamental boundary between contract law, which protects expectancy interests created through agreement between the parties, and tort law, which protects individuals and their property from physical harm by imposing a duty of reasonable care." *Id.* ¶ 32 *(citing Am. Towers Owners Ass'n, Inc. v. CCI Mech., Inc.*, 930 P.2d 1182, 1190 (Utah 1996)).

¶ 29 The implications of the economic loss rule on parties to a contract present themselves in this case. Petitioners argue that the economic loss rule does not apply to SDC and therefore it may maintain a negligence action because it is not a party to the *assigned* contracts. We disagree.

¶ 30 In making their argument, Petitioners would have us assume SDC did not assign the contracts to Enterprises. Assuming an assignment of the claims asserted here did not occur, as Petitioners argue in the alternative, we have no other option than to conclude that SDC has a contractual agreement with RB & G. In its argument to this court, however, Petitioners have characterized as a party that had no opportunity to contract with RB & G. Petitioners claim that because

state in their brief that "since [Enterprises] is in privity of contract with RB & G, [Enterprises] does not appeal the dismissal of its negligence claims against RB & G, as [Enterprises] and RB & G were in a position to allocate risk and damages by contract (by virtue of the assignment)." We do not reach this issue because Petitioners explicitly waived it on appeal.

SDC assigned the RB & G contracts to Enterprises, SDC lacks privity of contract with RB & G and can therefore sue RB & G for negligence. This characterization of the benefits a party may glean from assigning a contract impermissibly twists the economic loss rule. Petitioners would have us overlook the fact that SDC originally had the opportunity to bargain for the allocation of risk and benefits with RB & G.[8] An assignor who contracts with an obligor cannot subsequently invoke an assignment of the contract to escape the implications of the economic loss rule. Petitioners are incorrect in their argument that when SDC assigned the contracts to Enterprises, all prior history between SDC and RB & G vanished. If on remand the district court finds that an assignment did not take place or that the assignment did not assign the claims brought by Enterprises, then SDC must be viewed as a party that had a contractual relationship with RB & G, exactly the type of relationship to which the economic loss doctrine applies.

## CONCLUSION

¶ 31 We hold today that an assignee cannot recover more than the assignor could have recovered under the assigned contracts. To determine whether an assignee has stepped into shoes larger than its assignor is not a robotic inquiry of when the damages occurred, but rather an inquiry into the rights afforded the assignor by the contract. Additionally, we hold that a party cannot simply

avoid the implications of the economic loss rule by claiming that it assigned the underlying contract. As the original contracting party with RB & G, SDC had the opportunity to allocate risks and benefits between the parties. We therefore reverse the court of appeals and remand to the district court for proceedings consistent with this opinion.

¶ 32 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice WILKINS, and Justice PARRISH concur in Justice NEHRING's opinion.

---

8. We recognize that we have applied the independent duty exception to situations where a contract exists between the parties. *See Yazd v. Woodside Homes Corp.*, 2006 UT 47, ¶¶ 24–26, 143 P.3d 283; *Hermansen v. Tasulis*, 2002 UT 52, ¶ 17, 48 P.3d 235. In these cases, we have recognized that an independent duty may circumvent the economic loss rule, and "because the claim is based on a recognized independent duty of care," the rule does not bar the tort claim. *Hermansen*, 2002 UT 52, ¶ 17, 48 P.3d 235 (internal quotation marks omitted). In *Yazd*, we noted that the existence of a duty can be, among other factors, a function of reliance on a party's expertise. *See* 2006 UT 47, ¶¶ 24–26, 143 P.3d 283. Petitioners now argue that SDC relied on the RB & G engineers' expertise because an engineer provides specific and complicated information. Petitioners argue that RB & G should therefore be subject to a duty outside of any contract. Petitioners also point to the "special

relationship" doctrine in general tort law to show that a relationship of trust creates a duty between a third party and a professional when the third party relies on the professional's opinion. Petitioners' argument that RB & G has an independent duty to Petitioners that overcomes the existence of the contracts, however, is misplaced and unpersuasive. In *Yazd*, a fraudulent concealment case, we held that a developer-builder had an independent duty outside of any contract with the purchaser to disclose known and material defects. *Id.* ¶ 35. In this case, Petitioners argue that SDC's reliance on RB & G's expertise in itself causes RB & G to be liable in negligence. This argument fails to acknowledge that the independent duty in *Yazd* was a duty to disclose known and material defects, not an independent duty to refrain from acting negligently. We therefore cannot extend *Yazd* to this case.