**2016 UT App 200**

## THE UTAH COURT OF APPEALS

KIRTON MCCONKIE PC,
Appellant,
*v.*
ASC UTAH LLC,
Appellee.

Opinion
No. 20140798-CA
Filed September 22, 2016

Third District Court, Salt Lake Department
The Honorable Robin W. Reese
No. 110919255

Christopher S. Hill and Shawn T. Richards,
Attorneys for Appellant

John R. Lund and Julianne P. Blanch, Attorneys
for Appellee

JUDGE STEPHEN L. ROTH authored this Opinion, in which JUDGE J. FREDERIC VOROS JR. and SENIOR JUDGE RUSSELL W. BENCH concurred.[1]

ROTH, Judge:

¶1      ASC Utah LLC leased property in Summit County from Wolf Mountain Resorts LC. In a separate case, ASC Utah obtained a $60 million judgment (the Judgment) against Wolf Mountain for breach of the lease. Kirton McConkie PC represented Wolf Mountain in that case. Shortly before trial, Wolf Mountain assigned its right to receive rents from ASC Utah

---

1. Senior Judge Russell W. Bench sat by special assignment as authorized by law. *See generally* Utah R. Jud. Admin. 11-201(6).

to Kirton McConkie to secure payment of Kirton McConkie's past due and still-accruing attorney fees. After the trial, the court determined that ASC Utah had a right to set off its upcoming rent payment against the Judgment. Kirton McConkie then filed a separate action to determine whether ASC Utah's setoff right had priority over Kirton McConkie's right to the rents under the earlier assignment from Wolf Mountain. On summary judgment, the district court ruled that ASC Utah's right to a setoff takes priority. We affirm.

BACKGROUND[2]

¶2    In 1997, ASC Utah leased real property in Summit County, Utah from Wolf Mountain for the operation of a ski resort (the Ground Lease). The Ground Lease required ASC Utah to make a substantial annual rental payment each September.

¶3    In a preceding case, ASC Utah sued Wolf Mountain (the Breach Case) alleging various breaches of the Ground Lease. *See generally ASC Utah, Inc. v. Wolf Mountain Resorts, LC*, 2013 UT 24, ¶ 2 n.1, 309 P.3d 201 (providing citations to the litigation history). Wolf Mountain retained Kirton McConkie to defend it in the litigation and entered into an engagement agreement for legal services. Wolf Mountain fell behind in payments to Kirton McConkie, and in March 2011, with trial in the Breach Case close at hand, the two amended the engagement agreement. The amendment required Wolf Mountain to make specified monthly

---

2. "In reviewing a grant of summary judgment, we recite the facts and reasonable inferences that may be drawn from them in the light most favorable to the nonmoving party." *Winegar v. Springville City*, 2014 UT App 9, n.1, 319 P.3d 1 (citing *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600).

payments to Kirton McConkie until its legal fees were paid in full. The amendment[3] also provided,

> In order to secure its obligations to [Kirton McConkie] hereunder, [Wolf Mountain] hereby grants to [Kirton McConkie] a security interest in, and hereby assigns to [Kirton McConkie] all of [Wolf Mountain's] right, title and interest in and to, both (a) Rent . . . and (b) Option Payments . . . in [the] Ground Lease Agreement dated July 3, 1997 . . . , by and between [Wolf Mountain] and ASC Utah, Inc.

Following the seven-week Breach Case trial, the jury awarded ASC Utah approximately $54.5 million in damages and the court entered the Judgment against Wolf Mountain for approximately $60.6 million, including interest and attorney fees.

¶4     ASC Utah filed a motion asserting the right to set off the annual rental payments due under the Ground Lease against the Judgment. On September 9, 2011, approximately one week before ASC Utah's nearly $3 million annual rent payment came due to Wolf Mountain, the district court entered a ruling and order (the Setoff Order) granting ASC Utah's motion. Wolf Mountain had opposed the motion on the basis of section 3.02 of the Ground Lease, which provided that ASC Utah was not entitled to "any abatement, reduction, set off, counterclaim, defense or reduction with respect to the payment of any rent." But the court determined that, although ASC Utah had "waive[d] the right [to a] setoff" under section 3.02 of the Ground Lease, the Judgment for Wolf Mountain's breach triggered section 17.02. Section 17.02 provided that "[t]his Lease

---

3. Because the assignment provision contained in this amendment is of central focus to the issues now on appeal, for simplicity we will refer to this amendment as "the assignment."

is a valid and binding obligation of Landlord enforceable in accordance with its terms, subject to equitable principles . . . ." Interpreting that section, the court stated:

> The parties themselves agreed that the Ground Lease is enforceable against [Wolf Mountain] "in accordance with its terms subject to equitable principles." That phrase reflects that the waiver [in section 3.02] was not a complete waiver and does not, to this court, eliminate or negate all the provisions of the Ground Lease but provides that where equity is applicable, the lease provisions are subject to that equitable determination by a court[.]

Ultimately the court concluded that "[b]ased upon principles of equity and public policy," ASC Utah "is entitled to post-judgment setoff . . . on its $60 million judgment against" its annual rent payment to Wolf Mountain. Accordingly, the court ordered that "[r]ather than make the annual payment directly" to Wolf Mountain, ASC Utah "may deduct the amount of the annual rent payment from the amount of the judgment owed by [Wolf Mountain] when the annual rent payment is due." A week later, ASC Utah set off all of the approximately $3 million annual rent due against the Judgment.

¶5 In November 2011, Kirton McConkie sued both Wolf Mountain and ASC Utah alleging various claims for relief, including breach of contract against Wolf Mountain and unjust enrichment against ASC Utah. In essence, all of Kirton McConkie's claims were aimed at recovering the attorney fees that Kirton McConkie alleged it was due under the terms of the assignment. In March 2012, Kirton McConkie moved for summary judgment "on the issue of rent payments that were assigned" by Wolf Mountain to Kirton McConkie. Kirton McConkie argued that the assignment put its claim for attorney fees ahead of any claim that ASC Utah had as a result of the Judgment:

[A]t the time [ASC Utah] recorded its judgment lien against the Property, the judgment lien, as a matter of law, did not extend to the Rent, up to the amount of Kirton & McConkie's legal fees, because Wolf Mountain had already conveyed and assigned the Rent to Kirton & McConkie months earlier.

¶6 In August 2012, the district court denied Kirton McConkie's motion for summary judgment:

The Court concludes as a matter of law that Wolf Mountain's purported assignment to [Kirton McConkie] of an interest under the Ground Lease—the right to receive rents and other payments—at best gave [Kirton McConkie], as purported assignee, the same rights as Wolf Mountain, the assignor, and nothing more. The Court also concludes as a matter of law that any assignment of rents under the Ground Lease that [Kirton McConkie] may have acquired from Wolf Mountain would be wholly subject to [ASC Utah's] right of setoff or recoupment arising under the Ground Lease. The Court further concludes as a matter of law that Wolf Mountain's right to receive rent payments from [ASC Utah] under the Ground Lease was extinguished by [the Setoff Order] before any such rent monies were due and owing. The Court adheres to, and the parties are bound by, [the Setoff Order]. The Court therefore concludes as a matter of law that because Wolf Mountain has no right to receive those monies, neither does [Kirton McConkie] as Wolf Mountain's purported assignee.

Based on this ruling, ASC Utah filed its own motion for summary judgment, which the court granted. Kirton McConkie now appeals.

ISSUE AND STANDARD OF REVIEW

¶7     Although the parties frame the issue slightly differently, the basic question before us is whether Kirton McConkie's right to Ground Lease rents under the assignment is superior to and takes priority over ASC Utah's right to set off those rents against the Judgment. Because this appeal arises from a grant of summary judgment, "we resolve only legal issues and review the trial court's conclusions of law for correctness." *AMS Salt Indus., Inc. v. Magnesium Corp. of Am.*, 942 P.2d 315, 319 (Utah 1997).

ANALYSIS

¶8     The basic premise of Kirton McConkie's argument is simple: "When Wolf Mountain conveyed its rights in the Rent to [Kirton McConkie], Wolf Mountain possessed every right to receive that rent payment in full. And that is exactly what Wolf Mountain conveyed to Kirton McConkie." As a result, Kirton McConkie argues,

> Wolf Mountain conveyed all of its interest in the Rent to [Kirton McConkie] *before* [ASC Utah] obtained its judgment lien against Wolf Mountain. [Kirton McConkie's] interest in the Rent is not simply that of a secured creditor . . . . Rather, [Kirton McConkie] owns—free and clear of all encumbrances—the right to receive the Rent. That was the position Wolf Mountain was in when it conveyed its right to receive the Rent to [Kirton McConkie]. Because [ASC Utah's] right to setoff

and resultant judicial lien came several months after [Kirton McConkie's] acquisition, [ASC Utah's] execution on the Rent is subject to [Kirton McConkie's] rights therein.

ASC Utah counters that the issue must be resolved under the law of assignments: "[Kirton McConkie's] right to rent is as an assignee. It has no greater right to the collateral than the assignor, [Wolf Mountain]." Thus, ASC Utah argues, because Wolf Mountain's interest is subject to ASC Utah's right to set off, so is Kirton McConkie's. We agree with ASC Utah.

¶9      The idea underlying Kirton McConkie's argument appears to be that the right to receive future rent payments is severable from all other rights and responsibilities contained in the Ground Lease. That is, once Wolf Mountain assigned Kirton McConkie the right to receive rent, Wolf Mountain no longer owned any right to ASC Utah's rent payments—Kirton McConkie did, at least up to the amount of its unpaid attorney fees. Therefore, Kirton McConkie argues, ASC Utah could not set off the September rent payment against the Judgment because Kirton McConkie "received the assignment of Rent before [ASC Utah] obtained any setoff rights." But Kirton McConkie's argument misses the mark by ignoring the context in which the setoff right arose—specifically, the ongoing contractual relationship between Wolf Mountain and ASC Utah.

¶10 Kirton McConkie asserts that "[b]ecause [Kirton McConkie] already owned that right [to collect rent] when [ASC Utah] obtained its judgment, [ASC Utah's] judicial lien could not attach to it." But this assertion fails to take into account the legal significance of the relationships among the parties. It is true that "[a]n 'assignment' is a transfer of property or some other right from one person (the 'assignor') to another (the 'assignee'), which confers a complete and present right in the subject matter to the assignee." 6 Am. Jur. 2d *Assignments* § 1 (2016) (footnotes omitted). Kirton McConkie asks us to treat the assignment of

rents as if it were a simple conveyance of property that Wolf Mountain owned outright, and to treat ASC Utah's setoff interest in the rents as if it were simply a subsequent judgment lien against Wolf Mountain which could not attach to the rents because Wolf Mountain no longer had an interest in them. But an assignment of rights in a lease, as occurred here, is not as simple as a mere conveyance of property. Rather, the property right assigned—the right to receive rents—is a contractual right to the performance of the other party to that lease, in this case lessee ASC Utah. However, ASC Utah has its own rights to the performance of lessor Wolf Mountain under the Ground Lease. Indeed, the rights and obligations of the parties under the Ground Lease are inextricably intertwined; Wolf Mountain cannot by assignment simply sever the benefit of receiving rents from ASC Utah from Wolf Mountain's own obligations as lessor. *Cf. Clark v. Shelton*, 584 P.2d 875, 877 (Utah 1978) ("Generally, the law favors the assignability of contractual rights, unless the assignment would add to or materially alter the obligator's duty or risk."). Rather, the assignee of a contractual right, such as the right to receive rent under a lease, receives the assigned benefit subject to the assignor's corresponding obligations to the other party to the lease.

¶11    Thus, an assignee is often described as standing "in the shoes of the assignor." *Sunridge Dev. Corp. v. RB & G Eng'g, Inc.*, 2010 UT 6, ¶ 13, 230 P.3d 1000 (citation and internal quotation marks omitted). And a corollary of this principle is that

> [t]he assignee is subject to any defenses that would have been good against the [assignor]; the assignee cannot recover more than the assignor could recover; and the assignee never stands in a better position than the assignor. [A]n assignee gains nothing more, and acquires no greater interest than had his assignor. In other words, the common law

> puts the assignee in the assignor's shoes, whatever
> the shoe size.

*Id.* (alterations in original) (citations and internal quotation marks omitted); *see also SME Indus., Inc. v. Thompson, Ventulett, Stainback & Assocs., Inc.*, 2001 UT 54, ¶ 16, 28 P.3d 669 ("[T]he assignee never stands in a better position than the assignor." (emphasis, citation, and internal quotation marks omitted)); *Jack B. Parson Cos. v. Nield*, 751 P.2d 1131, 1133 (Utah 1988) ("An assignment of an interest in a contract gives the assignee the same rights as the assignor and nothing more.").

¶12 In its Setoff Order, the district court reasoned that section 3.02 of the Ground Lease effectively prevented ASC Utah from withholding rent as a self-help remedy for any breach by Wolf Mountain during the ordinary course of the lease. But once the Judgment was entered, that limitation became "subject to equitable principles" under section 17.02. The court also found that requiring ASC Utah to continue paying millions of dollars in rent in the face of the landlord's enormous judgment obligation for substantial breaches of the lease would be inequitable and against public policy. The court then concluded that, once section 17.02 was triggered by the Judgment, ASC Utah could set off rent as it became due. That is, absent the Judgment section 3.02 of the Ground Lease would have controlled and prohibited a setoff—just as Wolf Mountain would have been entitled to the rent, so too would Kirton McConkie. But the Judgment intervened before the September rent came due and ASC Utah's equitable right to a setoff under the Ground Lease matured.

¶13 Kirton McConkie's argument that Wolf Mountain no longer had any interest in the rents after the assignment is in effect an argument that the assignment would have allowed Wolf Mountain to elevate its obligation to pay Kirton McConkie over its responsibilities to compensate ASC Utah for serious breaches of the Ground Lease. This would essentially require

ASC Utah to pay Wolf Mountain's attorney fees with rent money it would not have owed to Wolf Mountain directly.

¶14    But such an approach is contrary to the fundamental principle that "the assignee never stands in a better position than the assignor." *SME Indus.*, 2001 UT 54, ¶ 16 (emphasis, citation, and internal quotation marks omitted). As the Utah Supreme Court explained, the "essential purpose" behind the principle

> is to protect the obligor, the party who must perform the correlative duty of the assigned right, so that the risk to the obligor is not materially enlarged over the risk created by its agreement with the assignor. In other words, the purpose behind the rule is that an assignee has rights and liabilities identical to those of its assignor. We believe that the relationship between the assignee and obligor is not best characterized as a form of privity, but rather as a continuation of the rights and liabilities of the assignor as evidenced by the assigned agreements and any further limitations stated in the assignment itself.

*Sunridge Dev. Corp.*, 2010 UT 6, ¶ 15 (citation and internal quotation marks omitted). Kirton McConkie's argument that the assignment effectively insulated it from ASC Utah's right to set off the annual rent against the subsequent Judgment payment defeats the "essential purpose" of protecting ASC Utah—"the party who must perform the correlative duty of the assigned right"—because such a result would "materially enlarge[]" "the risk to the obligor[, ASC Utah] . . . over the risk created by its agreement with the assignor[, Wolf Mountain]." *Id.* (citation and internal quotation marks omitted). Rather, Kirton McConkie's relationship with ASC Utah under the assignment is simply "a continuation of the rights and liabilities of" Wolf Mountain under the Ground Lease. And, as the Setoff Order provides, ASC Utah has a right under the terms of the Ground Lease to set off

the annual rent payment against Wolf Mountain's liability under the Judgment. By separating Wolf Mountain's duties as landlord from ASC Utah's obligation to pay rent, Kirton McConkie's approach would deny ASC Utah a remedy that the Setoff Order determined was available to it under the Ground Lease.[4] Kirton McConkie's approach also vitiates the principle that the assignee stands in the shoes of the assignor because the assignment would change the relative "rights and liabilities" of the parties and, as a result, "materially enlarge[] . . . the risk" to ASC Utah as lessee under the Ground Lease. *See id.*

---

4. Kirton McConkie also challenges whether the Setoff Order could "extinguish[] [its] right to receive a portion of the Rent" because it did not meet the legal requirements for a valid setoff. The right to a setoff of one obligation against another requires "mutuality of obligation." *Mark VII Fin. Consultants Corp. v. Smedley*, 792 P.2d 130, 133 (Utah Ct. App. 1990) ("As a general rule, in order to warrant a set-off the demands must be mutual and subsiding between the same parties[.]" (citation and internal quotation marks omitted)). In the Setoff Order, the district court recognized that "[t]he parties agree that pursuant to the terms of the Ground Lease that [ASC Utah] owes annual rent payments to [Wolf Mountain] on September 15." The court then stated,

> The debt owed by [ASC Utah] to [Wolf Mountain], namely the Ground Lease rent payment, and [ASC Utah's] claim against [Wolf Mountain], namely the judgment, are mutual and valid obligations because they are both based upon the same Ground Lease. Each side, both [ASC Utah] and [Wolf Mountain], owe something to each other and both are based upon the Ground Lease . . . . Therefore, they are mutual debts for purposes of . . . setoff."

We agree with the district court that this meets the requirements for a valid setoff.

¶15     Accordingly, we conclude that Kirton McConkie, as assignee, stood in the shoes of its assignor Wolf Mountain with respect to ASC Utah's annual rent obligation and that, as the district court ruled, "because Wolf Mountain has no right to receive those monies, neither does [Kirton McConkie] as Wolf Mountain's purported assignee." Therefore, even if the assignment occurred before the Judgment, the timing did not create the kind of priority interest that Kirton McConkie asserts here.

¶16     Kirton McConkie attempts to avoid this result by casting ASC Utah as a judgment creditor with a lien in competition with Kirton McConkie's superseding prior interest as a creditor in the rent. In this regard, Kirton McConkie refers to ASC Utah's right to a setoff and resultant judicial lien and argues that, because Kirton McConkie "already owned that right [to collect rent] when [ASC Utah] obtained its judgment, [ASC Utah's] judicial lien could not attach to it." But this approach undersells ASC Utah's rights under the Setoff Order. Although ASC Utah's right to a setoff was triggered by the Judgment, that right is not dependent on or derivative from a judgment lien. Rather, ASC Utah's setoff right arose out of the Ground Lease itself. In the Setoff Order, the district court recognized that

> [t]he debt owed by [ASC Utah] to [Wolf Mountain], namely the Ground Lease rent payment, and [ASC Utah's] claim against [Wolf Mountain], namely the judgment, are mutual and valid obligations because they are both based upon the same Ground Lease. Each side, both [ASC Utah] and [Wolf Mountain], owe something to each other and both are based upon the Ground Lease . . . .

In concluding that ASC Utah "has the right to exercise its right of setoff . . . for its rent payments owed to [Wolf Mountain] against the judgment owed to [ASC Utah] by [Wolf Mountain]," the Setoff Order addressed both sections 3.02 and 17.02 of the

Ground Lease. With respect to section 3.02, the court found that it waived the right to a setoff and that, except for this anti-setoff provision, ASC Utah would be "entitled to do as it now seeks to do, that is, set off . . . the rent payments against the judgment." With respect to section 17.02, the court stated that it "simply require[s] [Wolf Mountain] to abide by the terms of the Ground Lease but subject to principles of equity and bankruptcy law and other creditors' rights law[s]." Recognizing that section 17.02 "was put in [the Ground Lease] by the same authors of Section 3.02," the court found that the Ground Lease "provides that where equity is applicable, the lease provisions are subject to [an] equitable determination by a court." Accordingly, the Setoff Order concluded:

> Based upon principles of equity and public policy, . . . [ASC Utah] is entitled to post-judgment setoff or recoupment on its $60 million judgment against [Wolf Mountain] for the rent payment [ASC Utah] owes [Wolf Mountain] on September 15 each year. Rather than make the annual payment directly to [Wolf Mountain], [ASC Utah] may deduct the amount of the annual rent payment from the amount of the judgment owed by [Wolf Mountain] when the annual rent payment is due and submit documents reflecting such set off or recoupment.

And here, in granting summary judgment to ASC Utah, the district court echoed the reasoning of the Setoff Order, concluding that "any assignment of rents under the Ground Lease that [Kirton McConkie] may have acquired from Wolf Mountain would be wholly subject to [ASC Utah's] right of setoff or recoupment arising under the Ground Lease."

¶17    Thus, ASC Utah's right to set off its rent obligation against the Judgment for Wolf Mountain's breach derives from the mutual obligations and rights of ASC Utah and Wolf

Mountain under the Ground Lease itself, not from the legal status of the Judgment as a lien on Wolf Mountain's interests. Kirton McConkie's assignment, while perhaps superior to the lien of a random third-party with a judgment against Wolf Mountain, does not take priority over ASC Utah's right, as lessee under the Ground Lease, to set off rents against Wolf Mountain, the lessor. To the contrary, as assignee of Wolf Mountain's right to the rents, Kirton McConkie stands in the lessor's shoes and therefore has the same rights as Wolf Mountain and "nothing more." *Sunridge Dev. Corp.*, 2010 UT 6, ¶ 13 (citation and internal quotation marks omitted).

¶18 The cases Kirton McConkie relies on to support its argument are inapposite because they do not involve assignments. Instead, they deal with the relative rights of parties with interests in property that predate a creditor's judgment lien. For example, Kirton McConkie relies heavily on *Kartchner v. State Tax Commission*, 294 P.2d 790 (Utah 1956), in which the Utah Supreme Court held that "the judgment lien [of a third-party judgment creditor] was subordinate and inferior to a deed which predated it, whether [the deed was] recorded after such judgment or whether [the deed was] not recorded at all," *id.* at 791. According to Kirton McConkie, *Kartchner* stands for the proposition that "a judgment creditor cannot take from the judgment debtor something that it does not own." But as we have discussed above, ASC Utah's setoff right arises from the relationship of lessor and lessee under the Ground Lease, not from an unrelated judgment lien, and Kirton McConkie's implicit characterization of ASC Utah as merely a subsequent judgment creditor does not fit the circumstances. The other cases that Kirton McConkie cites are similarly inapposite. *See Garland v. Fleischmann*, 831 P.2d 107, 112 (Utah 1992) (concluding, in the context of a quiet title action, that the lien of a third party's judgment against a grantor who had conveyed the subject property away before entry of the judgment could not affect the grantee's interest because the judgment lien could attach only

"to the actual interest owned" by the grantor "when the judgment was docketed"); *Butler v. Wilkinson*, 740 P.2d 1244, 1257 (Utah 1987) (noting "[a]s a foundational matter" that "a judgment lien has no greater dignity in property law than the nature of the property to which it attaches"); *Capital Assets Fin. Servs. v. Lindsay*, 956 P.2d 1090, 1095 (Utah Ct. App. 1998) (stating that "a judgment lien cannot attach to a debtor's real property if the property has already been sold, conveyed, or quitclaimed—even if the judgment lien is recorded first—because there is no 'interest' to which the lien can attach."); *Lach v. Deseret Bank*, 746 P.2d 802, 804 (Utah Ct. App. 1987) (relying on the judgment lien statute and *Kartchner* to conclude that "Utah law is clear. A judgment creditor cannot place a lien against the property of a judgment debtor's grantee.").

¶19    Kirton McConkie also relies on cases which hold that a prior assignment takes priority over a right to a setoff arising from litigation. *See, e.g.*, *Carson v. Chevron Chem. Co.*, 635 P.2d 1248, 1259–61 (Kan. Ct. App. 1981) (concluding that a third-party assignee's prior assignment of rights to a money judgment took priority over a right of setoff that arose from counterclaims between the assignor and the defendant). But these cases are different because the right to a setoff arose solely as the result of the counterclaims in the litigation, whereas here the right to a setoff arose from the rights and obligations contained within the Ground Lease, not from the litigation itself.[5]

_____

5. To the extent Kirton McConkie's contention that "[t]his appeal is all about timing and priority" amounts to an argument that its right to the September rent payment is a security interest with priority over ASC Utah's subsequent judgment lien, that argument is unavailing because, among other things, even though the assignment preceded the Judgment, ASC Utah perfected its judgment lien before Kirton McConkie perfected the assignment. *Cf. J.R. Simplot Co. v. Sales King Int'l, Inc.*, 2000

(continued…)

CONCLUSION

¶20    We conclude that Kirton McConkie, as the assignee of Wolf Mountain's right to the annual rent payment under the Ground Lease, stands in Wolf Mountain's shoes. The Setoff Order gave ASC Utah the right to set off its annual rent payment against the Judgment, and under the assignment, Kirton McConkie "gains nothing more, and acquires no greater interest than had [its] assignor," Wolf Mountain. *Sunridge Dev. Corp.*, 2010 UT 6, ¶ 13 (citation and internal quotation marks omitted). Thus, the district court did not err in concluding that because Kirton McConkie had no greater right than Wolf Mountain to receive the September 2011 rent payment, the assignment did not prevent ASC Utah from setting off the rent payment against the Judgment. Accordingly, we affirm.

─────────

(…continued)

UT 92, ¶ 24, 17 P.3d 1100 ("A perfected security interest usually takes priority over an unperfected security interest."). Though Kirton McConkie "fil[ed] a UCC-1 financing statement . . . with the Utah Division of Corporations" before the Judgment, the parties do not dispute that the assignment could not have been perfected through a UCC filing; rather, perfection of the assignment required an appropriate recording in the real property records of the county recorder where the property subject to the Ground Lease was located. ASC Utah recorded the Judgment in November 2011, but Kirton McConkie did not record a notice of the assignment until February 2012. *See In re C.W. Mining Co.*, 530 B.R. 878, 887 (Bankr. D. Utah 2015) ("[A] judicial lien creditor has priority over an unperfected security interest . . . .").