**2019 UT App 160**

## THE UTAH COURT OF APPEALS

TIMBER LAKES PROPERTY OWNERS ASSOCIATION,
Appellant,
*v.*
PHILLIP E. COWAN, GAIL M. COWAN, AND
THE COWAN FAMILY TRUST,
Appellees.

Opinion
No. 20180125-CA
Filed September 26, 2019

Fourth District Court, Heber Department
The Honorable Jennifer A. Brown
No. 140500089

David L. Barclay, Lincoln Harris, and Robert S.
Rosing, Attorneys for Appellant

Bruce R. Baird and P. Matthew Muir, Attorneys
for Appellees

JUDGE GREGORY K. ORME authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and DIANA HAGEN
concurred.

ORME, Judge:

¶1      Timber Lakes Property Owners Association (the
Association) initiated suit against Phillip E. Cowan, Gail M.
Cowan, and The Cowan Family Trust (collectively, the Cowans)
seeking injunctive relief requiring the Cowans to remove a
detached garage they constructed on their property. After all
was said and done, the Association won the battle but lost the
war. The district court granted summary judgment in favor of
the Association, determining that the garage violated the
applicable Declaration of Protective Covenants, Conditions,
Restrictions and Management Policies for Timber Lakes Estates

(the CC&Rs). But despite concluding that a violation had occurred, the court declined to grant the permanent injunction the Association sought. In relevant part, the court determined that the Association "ha[d] not shown that an award of monetary damages would be insufficient to remedy the purported harm" and had therefore failed to establish irreparable harm—a prerequisite of injunctive relief. We hold that the district court did not abuse its discretion in so concluding. With respect to an ancillary issue, we also hold that Wasatch County did not assign its zoning ordinance enforcement rights to the Association.

BACKGROUND[1]

¶2    The Association is the homeowners association that governs Timber Lakes Estates (Timber Lakes), located in Wasatch County. Timber Lakes encompasses eighteen subdivisions, one of which is Plat 12. Plat 12, in turn, is further subdivided into lots, including Lot 1275 (the Property). Pursuant to a recorded agreement entered into by Wasatch County (the County), the Association, and the developer of Timber Lakes (the Maintenance Agreement), "[t]he Association possesses a right of way . . . to provide all maintenance and improvements for roadways" in Timber Lakes. Within Plat 12 specifically, the Association possesses a right-of-way to maintain, improve, and use a 60-foot wide road (the Plat 12 Right-of-Way) that encroaches 30 feet into the western portion of the Property and 30 feet into the eastern portion of the lots located directly across

---

1. "The parties do not dispute the factual findings of the district court [that are relevant to our resolution of this case]. We therefore recite the facts in accordance with the district court's findings." *Ockey v. Lehmer*, 2008 UT 37, ¶ 3, 189 P.3d 51. *See infra* notes 5 and 7.

from the Property. To date, the Association has not constructed a road on the Plat 12 Right-of-Way, and it has no plans to do so. In its stead, a separate road (the Existing Road) services the Property and neighboring lots. The Existing Road is not within the Plat 12 Right-of-Way.

¶3    Since their recordation in 1989, the CC&Rs have governed Timber Lakes. The Association has the right and duty under the Maintenance Agreement "to enforce all covenants, conditions, restrictions and management policies set forth in the [CC&Rs]," and the County reserved the right "to enter upon the premises of [Timber Lakes] for inspection and for enforcement of all applicable laws, ordinances, [CC&Rs] and agreements." Should the Association fail to meet its enforcement obligations, the Maintenance Agreement provides that "the County may . . . cause suit to be brought against the Association for the purpose of requiring it to enforce the same or may itself bring and prosecute a suit in the name of the Association for the purpose of enforcing the [CC&Rs]."

¶4    The CC&Rs require Timber Lakes property owners to submit detailed plans and specifications to, and receive written approval from, the Association before commencing construction of any structure on their property. The Association has the authority to disapprove any construction plans that "are not in accordance with all of the provisions of [the CC&Rs]." The CC&Rs further require the construction of any improvements to "comply with all requirements of the federal, state and local governing authorities," of which Wasatch County Code 16.09.09(1) (the County Setback Ordinance) is of particular relevance to the current case. It requires structures to "be a minimum of sixty (60) feet from the center of [a] road, or thirty (30) feet from the edge of [a] right-of-way, whichever is greater."

## *The Construction of the Garage*

¶5 The Cowans purchased the Property in 2012 on behalf of their relatives, Peter and Beverley McDermott, who immediately took possession. The Cowans did so with assurances that the McDermotts would purchase the Property within the next three years.[2] At the time of purchase, the Property contained a house but no garage. Upon purchase of the Property, the Cowans[3] applied for and received a building permit from the County and commenced construction of a detached garage immediately southwest of the house. Contrary to the provisions of the CC&Rs, they did so without first seeking written approval from the Association.

¶6 On the day that excavation for the garage began, one of the Association's board members notified the Cowans that they were required to submit plans for the garage to the Association,

---

2. The Cowans did transfer the Property to the McDermotts approximately one year after the Association initiated the current action. However, the district court determined, pursuant to rule 2(c) of the Utah Rules of Civil Procedure, that "the Association is entitled to pursue its Amended Complaint against [the Cowans] to its conclusion despite their transfer of title to [the Property] to the McDermotts after this action was commenced, and [the Cowans'] affirmative defense that the Association failed to name the McDermotts as the real party in interest fails as a matter of law." Neither party moved the court to join the McDermotts to the action, and neither party raises this issue on appeal.

3. For ease in recounting the facts, we do not distinguish the actions taken by the McDermotts from those taken by the Cowans but refer to the Cowans and McDermotts collectively as the Cowans.

which they immediately did. The next day, the board member returned to the Property accompanied by the Association's roads manager and informed the Cowans that there was a potential problem with the garage's location "due to the Association's plans to widen [the Existing Road] in the future." Actually, the garage's western wall was located within three feet of the eastern edge of the Plat 12 Right-of-Way in violation of the thirty-foot setback required by the County Setback Ordinance.[4] As a result of that visit, construction of the garage ceased.

¶7    Following additional discussions, the Cowans met with three of the Association's board members in mid-October 2012 to discuss the garage. The representatives informed the Cowans that the Association would permit them to build the garage if they could obtain a letter from the County approving the garage's location. The three board members, according to the Cowans, also represented that they had the authority to approve the garage on the Association's behalf.

¶8    Within a week, the Cowans were successful in obtaining a letter from the County's planning department (the County Letter).[5] The County Letter stated that the garage's location in

---

4. The record at times speaks of a "widening" of the Existing Road, suggesting that the Existing Road and the Plat 12 Right-of-Way overlap, with the Plat 12 Right-of-Way being the wider of the two. Despite this occasional discrepancy in the record, the parties agree that the Existing Road is entirely separate from the Plat 12 Right-of-Way.

5. The Association argues that in obtaining the County Letter, the Cowans submitted a site plan depicting the wrong road. Instead of showing the garage's location in relation to the Plat 12 Right-of-Way, the site plan only depicted its relation to the

(continued…)

(…continued)

Existing Road. The Association further argues that "there is no evidence in the record that the Association ever received the [County] Letter" and that the district court therefore erred in stating in its findings that the letter was presented to the Association. However, in view of our resolution of the case, this factual disagreement proves to be unimportant.

The Association first made the argument—that the Cowans provided the County with an incorrect site plan—in support of its contention that the Cowans were not innocent parties and that the district court was therefore precluded from engaging in a "balance of the equities"—the final inquiry a district court must engage in when determining whether injunctive relief is proper. *See Johnson v. Hermes Assocs., Ltd.*, 2005 UT 82, ¶ 32, 128 P.3d 1151 ("Balancing the equities is reserved for the innocent defendant, who proceeds without knowledge or warning that he is encroaching upon another's property rights.") (quotation simplified). However, as explained in section II *infra*, we affirm the district court's decision not to grant injunctive relief on the ground that the Association failed to show that it was irreparably harmed by the construction of the garage, thereby rendering review of the court's balancing of the equities analysis unnecessary.

And regarding the Association's second point—that there is no evidence that the Association ever received the County Letter—the Association acknowledges that this fact is of limited importance in the current case. It stated that it raised the issue only because "the district court chose to comment upon it" in its findings and requested, should we remand this case for further proceedings, that we instruct the court to correct this and certain other factual findings that have ultimately proven immaterial in light of our resolution of this case. Because we have no cause to remand, we do not further address this argument.

relation to the Existing Road "met the requirements of the [County Setback Ordinance]," as evidenced by the permit the County had previously issued to the Cowans. But it continued that "[i]n the future if the road is widened the structure will be considered legally non-conforming meaning any new addition would be required to meet current setback requirements." Although the letter contemplated a widening of the Existing Road, it made no mention of the Plat 12 Right-of-Way and the garage's violation of the County Setback Ordinance in relation to it.[6] One of the three board members with whom the Cowans had met in mid-October subsequently advised them that construction of the garage could resume.[7]

---

6. The Cowans acknowledged that the garage "is not located . . . a minimum of thirty (30) fee[t] from the edge of the [Plat 12 Right-of-Way]."

7. In its motion for summary judgment, the Association presented the facts concerning the Cowans' interactions with various members of the Association's board as "undisputed for purposes of [its] Motion for Summary Judgment, only, and reserve[d] the right to admit or deny any of them during the pendency of this action should [its] motion be denied." However, the Association argues that the district court erred in relying on Peter McDermott's affidavit when denying injunctive relief. The content of his communications with the board members is ultimately unimportant to the resolution of the present case, especially in light of the district court's conclusion that regardless of what transpired between the Cowans and the board members, "in constructing the Garage, [the Cowans'] reliance upon the statements and conduct attributed to the Board Members . . . is not sufficient to relieve them from a finding that the Garage is in violation of the [CC&Rs]."

¶9    In early November 2012, the Cowans received a letter from the Association's attorney informing them that "[t]he garage constitute[d] a continuing violation, nuisance and/or trespass" upon the Plat 12 Right-of-Way. The letter stated that "[a]lthough road widening or other adjustment within the right-of-way is not scheduled, there will come a time when such will occur." It further notified the Cowans that when such time came, they "may then need to remove, modify, or relocate the garage as a result of its continuing violation" or "may then be responsible for costs to [the Association] for steps necessary to protect the garage from vehicles or from run-off that would not have been necessary had [they] complied with the set-back requirement."[8] Despite the Cowans' receipt of the November letter, construction of the garage was completed, and they did not receive any further negative communication from the Association regarding the garage until the Association initiated the current action almost a year and a half later, in 2014.

## *Procedural History*

¶10    In its suit, the Association sought a permanent injunction against the Cowans ordering them to either "remove the Garage from the [Property] at their sole expense" or, in the alternative, "to relocate the Garage at their sole cost and expense" to a location on the Property that would be in compliance with the County Setback Ordinance. The Association did not request

---

8. The record is unclear as to the timing of this letter in relation to the board member's oral representation to the Cowans that construction of the garage could resume. Regardless of whether the board member's communication took place before or after the November letter, construction of the garage recommenced, and the Cowans heard no further complaint from the Association until 2014.

monetary damages in the alternative. Following a stipulated stay of proceedings, the Cowans filed their answer and counterclaim.

¶11    At the conclusion of discovery, the Association filed a motion for summary judgment. The district court granted the motion, indicating it would dismiss the Cowans' counterclaims and rule in favor of the Association on its claims. In granting the summary judgment motion the court, in relevant part, concluded that (1) the manner of construction and location of the garage violated the CC&Rs and the Maintenance Agreement;[9] (2) "neither the Association nor any of said Board Members have, or did have at any time, the power or authority to authorize, excuse, or waive said Violations by agreement or otherwise or to make representations to the contrary"; and (3) because the Cowans had actual and/or constructive knowledge of the CC&Rs and the Maintenance Agreement at the time of purchase and when constructing the garage, they were not entitled to rely on the contrary statements and conduct of the Association's board members.

¶12    But despite granting the Association's summary judgment motion on its substantive claims, the district court declined to award the permanent injunction the Association sought. Following supplemental briefing and a hearing on the issue, the court concluded that although the Association had successfully established the second factor of the permanent injunction

---

9. Because the district court concluded that the Maintenance Agreement did not grant the Association authority to enforce violations of county ordinances in the County's stead, *see* section III *infra*, and because the "County ha[d] not seen fit to take a position contrary to that expressed in the [County Letter]," the court "decline[d] to find a violation of the [County Setback Ordinance] at [that] time."

inquiry,[10] "the remaining prongs are not quite as clear." The court first noted that the Association had not presented evidence of special damages. Referring to the required showing of irreparable harm, the court next stated that the Association "ha[s] not shown that an award of monetary damages would be insufficient to remedy the purported harm." Finally, the court determined that "a balancing of the equities does not weigh in favor of a permanent injunction." Specifically, although the Cowans had not fully complied with the provisions of the CC&Rs and the Maintenance Agreement when constructing the garage, "they did make efforts to do so." The court concluded that the Cowans "did not intentionally flaunt the applicable requirements," because "[t]hey engaged with the [Association] and the County in an attempt to understand what was required," but neither entity was "accurate or complete in their communications" with the Cowans. Additionally, the Association was not wholly without blame because it bore the responsibility of assuring compliance with the CC&Rs and the Maintenance Agreement, and the Association's board members "shouldn't be allowed to act in a manner inconsistent with governing covenants and restrictions and then bear no responsibility for the result." In light of this, the court concluded that requiring the Cowans to tear down their garage was "a harsh remedy that [was] not warranted under these facts and

---

10. "A court may grant a permanent injunction if it determines that (1) the petitioner establishes standing by demonstrating special damages, (2) the petitioner has a property right or protectable interest, (3) legal remedies are inadequate, (4) irreparable harm would result, (5) court enforcement is feasible, and (6) petitioner merits the injunction after balancing the equities." *Johnson v. Hermes Assocs., Ltd.*, 2005 UT 82, ¶ 13, 128 P.3d 1151.

circumstances." The court entered its final judgment incorporating its rulings.

¶13 The Association appeals.

ISSUES AND STANDARDS OF REVIEW

¶14 The Association raises two primary issues on appeal that we address on the merits.[11] First, it challenges the district court's

---

11. The Association makes two additional arguments, the merits of which we do not reach. First, it argues that the district court misapplied rule 56(f)(1) of the Utah Rules of Civil Procedure because it "essentially" awarded summary judgment in favor of the Cowans, the nonmoving party, by denying the Association's request for a permanent injunction without first giving it "notice and a reasonable time to respond." But the Association has not preserved this argument. To preserve an issue for appeal, a party must present the issue below "in such a way that the trial court had the opportunity to rule on it." *State v. Robinson*, 2018 UT App 103, ¶ 38, 427 P.3d 474 (quotation simplified). The Association contends that the issue was preserved "by virtue of the district court's Ruling where [the issue being appealed] appears for the first time." The Association appears to be arguing that it did not have an opportunity to raise the rule 56(f)(1) issue before the district court because the court's summary judgment ruling was a final appealable order that started the running of the 30-day period to file an appeal. *See* Utah R. App. P. 4(a). But after the district court orally granted the Association's summary judgment motion, it ordered supplemental briefing on the issue of remedies and held a hearing. If this did not satisfy rule 56(f)(1), it nonetheless presented the Association with an opportunity to raise the issue prior to the entry of final judgment, which the Association did

(continued…)

denial of injunctive relief despite the court's conclusion that the garage's location violated the CC&Rs. This case is in a somewhat unusual posture as concerns the standard of review. The Association argues that we should apply the summary judgment standard of review (i.e., for correctness) because the court's denial of injunctive relief was a determination made in response to a motion for summary judgment and the supplemental briefing ordered by the court. But a court's ultimate decision to grant or deny injunctive relief—including the determination whether a plaintiff suffered irreparable harm—is ordinarily reviewed for an abuse of discretion. *See Osguthorpe v. ASC Utah, Inc.*, 2015 UT 89, ¶¶ 37–38, 365 P.3d 1201. Although the district court combined its summary judgment and injunction rulings in a single order, we view the court's grant of the Association's

---

(…continued)

not do. The argument is therefore unpreserved for appeal. "And because [the Association] has not argued that an exception to the preservation rule applies, we have no occasion to address the merits of this issue on appeal." *See State v. Murphy*, 2019 UT App 64, ¶ 14, 441 P.3d 787.

The Association also claims that the district court altered "certain previously undisputed facts" and added other facts "for which no evidence was presented by the parties" in its final order formally granting summary judgment but denying equitable relief. Although we express similar preservation concerns, this issue is more readily disposed of on the ground that none of the facts that the Association challenges are relevant to our resolution of this appeal, *see supra* notes 5 and 7, which the Association acknowledges by requesting that we order the district court to correct the alleged alterations and additions "if this case is remanded for further proceedings." Because we have no occasion to remand this case, we need not consider this issue further.

summary judgment motion and the court's subsequent denial of a permanent injunction as two separate rulings.[12]

¶15 A grant of summary judgment and the subsequent determination of appropriate remedies are separate issues that involve inherently different inquiries. Summary judgment review is limited to an inquiry into whether a "genuine dispute as to any material fact" exists and, if so, whether the "moving party is entitled to judgment as a matter of law." Utah R. Civ. P. 56(a). Because these are purely legal determinations, we review them for correctness. *See Salt Lake County v. Holliday Water Co.*, 2010 UT 45, ¶ 14, 234 P.3d 1105. Conversely, when a party seeks equitable relief, it invokes the equitable jurisdiction of the court, *see Ockey v. Lehmer*, 2008 UT 37, ¶ 44, 189 P.3d 51, the nature of which is largely within the discretion of the court and, with the exception of the legal standard applied by the court, is reviewed accordingly, *see Osguthorpe*, 2015 UT 89, ¶ 37. Of particular relevance to the present case, a district court's determination of irreparable harm is reviewed for an abuse of discretion. *Id.* ¶¶ 37–38. Thus, we decline the Association's invitation to apply the summary judgment standard of review to the court's permanent injunction ruling and instead review that decision for an abuse of discretion.[13]

---

12. Thus, while the Association acknowledges that it did not dispute the Cowans' account of their interactions with the board members for the limited purpose of summary judgment, it contends that the district court nonetheless erred in relying on Peter McDermott's affidavit when it subsequently denied injunctive relief. *See supra* note 7.

13. Even if we were to review the district court's decision de novo, the Association would not prevail on appeal because, as discussed in section II *infra*, the Association has not presented

(continued…)

¶16    Second, the Association argues that the district court erred in determining that the Association lacked the authority under the Maintenance Agreement to enforce the County Setback Ordinance as the County's assignee. "The interpretation of a contract is [a] legal question, which we . . . review for correctness." *Mind & Motion Utah Invs., LLC v. Celtic Bank Corp.*, 2016 UT 6, ¶ 15, 367 P.3d 994.

ANALYSIS

I. Appellate Jurisdiction

¶17    Before reaching the merits of the parties' arguments, we must first address the jurisdictional concern that arose prior to oral argument. *See Hayes v. Intermountain GeoEnvironmental Services, Inc.*, 2018 UT App 223, ¶ 2, 437 P.3d 650 ("Because acquiescence of the parties is insufficient to confer jurisdiction on the court, the initial inquiry of any court should always be to determine whether the requested action is within its jurisdiction.") (quotation simplified); *McClellan v. State*, 2012 UT App 316, ¶ 5, 290 P.3d 326 ("Whether we have subject matter jurisdiction is a threshold issue, which can be raised at any time and must be addressed before the merits of other claims."). Our concern arose during our review of the transcript of the remedies hearing during which the district court declined to issue a permanent injunction. After the court rendered its decision, it stated that the case up to that point "ha[d] been entirely focused on" the Association's request for a permanent injunction. The

(…continued)
any evidence of plans to construct a road on the Plat 12 Right-of-Way but only asserts that it "contemplate[s]" doing so sometime in the indefinite future which, as a matter of law, is insufficient to establish irreparable harm.

court subsequently offered the Association the choice between (1) "present[ing] evidence [at a subsequent hearing] strictly focused upon monetary damages that would need to be awarded in order to alleviate the breach or the actions of the [Cowans]" or (2) reserving that issue for future resolution and proceeding with an appeal from its final judgment denying the requested permanent injunction. The Association elected to proceed with the appeal.

¶18　It appeared to us that the district court may have intended to reserve the determination of monetary damages for consideration following the current appeal. If true, this would have robbed the court's order of finality—especially in the absence of the court's certification of its order as final pursuant to rule 54(b) of the Utah Rules of Civil Procedure. *See Hayes*, 2018 UT App 223, ¶ 2 ("As a general rule, appellate courts obtain jurisdiction over an appeal only after the district court issues a final order or judgment that ends the controversy between the litigants.") (quotation simplified). *See also Bradbury v. Valencia*, 2000 UT 50, ¶ 9, 5 P.3d 649 ("A judgment is final when it ends the controversy between the parties litigant.") (quotation simplified); *id.* ¶ 12 ("[O]rders and judgments that are not final can be appealed if . . . the trial court expressly certifies them as final for purposes of appeal under rule 54(b)."). We alerted the parties to our concern and requested that they be prepared to address it at oral argument.

¶19　At oral argument, the Association argued that it understood the district court's offer to be an "invitation to amend the pleadings," if it desired, *cf.* Utah R. Civ. P. 15(b)(1) ("A party may move—at any time, even after judgment—to amend the pleadings to conform them to the evidence and to raise an unpleaded issue."), because the Association sought in its complaint only an order requiring the Cowans to either "remove the Garage from the [Property] at their sole expense" or "to relocate the Garage at their sole cost and expense" to a location

that would be in compliance with the CC&Rs and the County Setback Ordinance and did not request monetary damages. The Association explained that it had declined the court's invitation to amend its pleadings so it could pursue monetary damages against the Cowans and instead elected to stand on its complaint and the court's order as entered and to proceed with the current appeal. This is analogous to situations where plaintiffs elect to "stand on" a dismissed complaint and proceed directly with an appeal of the dismissal despite having been granted leave to amend the complaint dismissed without prejudice. *See Bonneville Tower Condo. Mgmt. Comm. v. Thompson Michie Assocs., Inc.*, 728 P.2d 1017, 1019 & n.1 (Utah 1986) (per curiam); *McClellan*, 2012 UT App 316, ¶¶ 7–8.

¶20    We do not read the court's offer to necessarily amount to an "invitation to amend the pleadings" because such an amendment may not have been necessary at that juncture by virtue of rule 54 of the Utah Rules of Civil Procedure, which directs district courts to "grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." Utah R. Civ. P. 54(c). Nevertheless, with the court having declined to award equitable relief and the Association having declined the offered opportunity to pursue monetary damages, "all claims and the rights and liabilities of all parties" had been "adjudicate[d]," thereby rendering the court's subsequent order a final, appealable order. *Id.* R. 54(a). Indeed, the order itself makes this clear: "This constitutes the final ruling of the Court and no further order is required."

¶21    Thus, having had our jurisdictional concerns assuaged, we now address the merits of the Association's appeal.

## II. Injunctive Relief

¶22    "The right to an equitable remedy is an exceptional one, and absent statutory mandate, equitable relief should be granted

only when a court determines that damages are inadequate and that equitable relief will result in more perfect and complete justice." *Ockey v. Lehmer*, 2008 UT 37, ¶ 44, 189 P.3d 51 (quotation simplified). By seeking only injunctive relief and waiving any claim for monetary damages at this juncture, the Association effectively "chose to invoke only the equitable jurisdiction of the court," which "jurisdiction is precluded if," among other things, "the plaintiff . . . will not suffer substantial irreparable injury." *Id.* (quotation simplified). This principle has been incorporated into the standard inquiry that district courts undertake when determining whether a permanent injunction is warranted:

> A court may grant a permanent injunction if it determines that (1) the petitioner establishes standing by demonstrating special damages, (2) the petitioner has a property right or protectable interest, (3) legal remedies are inadequate, (4) *irreparable harm would result*, (5) court enforcement is feasible, and (6) petitioner merits the injunction after balancing the equities.

*Johnson v. Hermes Assocs., Ltd.*, 2005 UT 82, ¶ 13, 128 P.3d 1151 (emphasis added).

¶23 Although the thrust of the Association's arguments focuses on the sixth prong—that the district court erred in engaging in a balancing of the equities—we do not reach that issue because the Association has not shown that the district court exceeded its discretion in determining that the Association had not suffered irreparable harm, thereby precluding equitable relief altogether.[14]

---

14. The Association has never argued that a showing of irreparable harm was unnecessary in this case. Neither party

(continued…)

¶24　Irreparable harm "is generally considered the most important" of the "ground[s] for injunctive relief." *System Concepts, Inc. v. Dixon*, 669 P.2d 421, 427 (Utah 1983). A party suffers irreparable harm if it "cannot be adequately compensated in damages" or sustains "damages [that] cannot be compensable in money." *Carrier v. Lindquist*, 2001 UT 105, ¶ 26, 37 P.3d 1112 (quotation simplified). An injury is irreparable "if the damages are estimable only by conjecture and not by any accurate standard." *Johnson*, 2005 UT 82, ¶ 18 (quotation simplified). In the present case, the Association's effort to establish irreparable harm falls short in two ways.

¶25　First, although the Association contends on appeal that it "has contemplated, and does contemplate, installation of [a road along the Plat 12 Right-of-Way]," it does not point us to, nor does our review of the record reveal, that this was or is more than a distant possibility. Indeed, the evidence that the Association presented to the district court suggests how remote the possibility is. In the letter the Association's attorney sent the Cowans informing them that the garage's location violated the CC&Rs, the Association indicated, with our emphasis, that "[*a*]*lthough road widening or other adjustment within the right-of-way*

---

(…continued)

cited *Fink v. Miller*, 896 P.2d 649 (Utah Ct. App. 1995), which suggested in a footnote, in commenting on an aspect of the district court's analysis undertaken before the district court had settled on abandonment as the basis for its decision to deny injunctive relief, that "[p]roperty owners have a protectable interest in enforcing restrictive covenants through injunctive relief without a showing of harm." *Id.* at 655 n.8. Because both parties treat a showing of irreparable harm as a prerequisite to injunctive relief, we address whether such a showing was made without expressing an opinion on the applicability or correctness of the dicta in *Fink*.

*is not scheduled*, there will come a time when such will occur." And apart from claiming that it contemplates initiating construction of a road along the Plat 12 Right-of-Way sometime in the indefinite future, which construction the garage would inhibit, the Association has not asserted any other form of harm caused by the garage. At most the Association has demonstrated a theoretical future harm—not an existing harm that is irreparable.

¶26     This lack of an actual plan on the part of the Association to construct a road along the Plat 12 Right-of-Way is significant because a party seeking a permanent injunction must demonstrate that "irreparable harm *would* result" without the injunction. *Id.* ¶ 13 (emphasis added). Although "injunctive relief is an anticipatory remedy purposed to prevent the perpetration of a threatened wrong or to compel the cessation of a continuing one," *System Concepts*, 669 P.2d at 428 (quotation simplified), "the threatened injury must be a real and immediate injury, not an abstract injury or one that is conjectural or hypothetical," *InnoSys, Inc. v. Mercer*, 2015 UT 80, ¶ 79, 364 P.3d 1013 (Durham, J., dissenting) (quotation simplified). For this reason, "[a] court will not exercise its power to grant injunctive relief 'to allay a mere apprehension of injury at an indefinite future time.'" *Id.* (quoting 42 Am. Jur. 2d *Injunctions* § 34 (2010)). And because our Supreme Court has not carved out an exception to this rule in the real property context—as opposed to that of misappropriation of trade secrets, *see id.* ¶ 34 (majority opinion)—a mere claim of undefined future plans is insufficient to establish irreparable injury, thereby precluding issuance of a permanent injunction.[15]

---

15. At oral argument, the Association argued for the first time that "future plans constitute current irreparable harm." In support of this assertion, the Association cited *Carrier v.*

(continued…)

(…continued)

*Lindquist*, 2001 UT 105, 37 P.3d 1112, in which our Supreme Court referenced the plaintiffs' future plans to landscape their backyard, repair a roof, build a shed, and store a boat in concluding that they had suffered irreparable harm. *Id.* ¶ 26. The plaintiffs had brought suit against the defendants for a wall defendants had built that blocked plaintiffs' ready access to a back alley. *Id.* ¶¶ 6–7. With the exception of their plans to landscape the backyard, which the plaintiffs had already commenced, *Carrier* is unclear as to whether the plaintiffs' plans to repair a roof, build a shed, or store a boat—all of which required delivery of large objects to the property through the back alley—were imminent or merely something they possibly intended to do sometime in the indefinite future. *See id.* ¶¶ 26, 30. But we note that the plaintiffs were relatively recent homebuyers at the time the defendants first obstructed the back alley with a wall, *see id.* ¶¶ 4, 6–7, and the plaintiffs' planned endeavors are typical of new homebuyers intending to renovate a recent purchase, suggesting the plans may have been for rather immediate work. Regardless, our Supreme Court mentioned the plans in the context of the existing and continuous nature of the harm caused by the defendants' wall and did not base its decision solely on the existence of indefinite future plans. *See id.* ¶ 26.

The Court discussed the plaintiffs' plans in response to the defendants' argument that the harm was compensable in monetary damages because the obstruction caused "a loss of about $600 in property value." *Id.* In rejecting this reasoning, the Court stated that apart from the decrease in property value, the plaintiffs suffered additional harms that were "of a continuing nature" and "immeasurable in money damages" because such "losses would be based on conjecture of how [the] plaintiffs may use the alley in the future and an estimate of how much money it

(continued…)

(…continued)

would cost to carry out these conjectured plans without access through the alley." *Id.* Although we understand how such language, if taken in isolation and out of context, could be construed to mean that "future plans constitute current irreparable harm," as the Association asserts, we read *Carrier* differently.

Our Supreme Court did not base its conclusion of irreparable harm on the fact that the plaintiffs had future plans that may or may not ever come to fruition. Rather, its focus was on the *existing* harm the plaintiffs were suffering and its *continuous* nature. The plaintiffs had previously "openly and regularly used the alley to deliver goods and equipment," but the wall hindered such activity and would continue to do so for as long as the plaintiffs owned the property. *Id.* ¶ 4. It was the continuing nature of an existing harm that the Court focused on when it determined monetary damages could not be reliably calculated. Although the Court did make mention of the plaintiffs' future plans, it did so in the context of the plaintiffs' prior regular use of the alley that the wall had stymied. Namely, even if monetary damages could somehow be determined so as to accurately compensate the plaintiffs for their prior use of the alley, such damages certainly could not be reliably calculated so as to compensate the plaintiffs for any additional future plans the wall might inconvenience or prevent altogether—especially because such "losses would be based on conjecture of how [the] plaintiffs may use the alley in the future and an estimate of how much money it would cost to carry out these conjectured plans without access through the alley." *Id.* ¶ 26. We therefore do not read *Carrier* to mean that the existence of uncertain future plans, without more, satisfies the irreparable harm requirement. Of significance, *Carrier* involved an alley that had long been in use and was actually blocked by a wall, while our case involves a

(continued…)

¶27 Second, even if the Association had firm plans to construct a road along the Plat 12 Right-of-Way, it has not demonstrated that the district court abused its discretion when it determined that "the [Association] ha[d] not shown that an award of monetary damages would be insufficient to remedy the purported harm" caused by the Cowans' garage. Specifically, the court reasoned that "reconfiguring the road (including acquisition of whatever amount of property from affected landowners) would allow the [Association] to install the road in compliance with county regulations and cure any effect from [the Cowans'] violation."

¶28 Relying on the principle that a plaintiff's injuries are irreparable "if the damages are estimable only by conjecture and not by any accurate standard," *Johnson*, 2005 UT 82, ¶ 18 (quotation simplified), the Association argues that the court "misconstrue[d] the 'irreparable harm' standard" because an "attempt to estimate [monetary] damages would require conjecture based upon conjecture." It argues that such a determination would involve "conjecture as to how, when, and where the Plat 12 [Right-of-Way] might be relocated" and "conjecture as to what damages might flow from such conjectured use." We disagree.

¶29 The district court reasoned that the Association could be monetarily compensated for "the cost of reconfiguring the road (including acquisition of whatever amount of property from affected landowners)." As the court suggested at the remedies hearing, this amount could be calculated through the testimony of "experts, . . . engineers, [etc.]" Despite the Association's liberal use of the word "conjecture," it has not persuaded us that the

---

(…continued)
road that could possibly be constructed in the future but does not now exist in its platted space.

court abused its discretion in concluding that the use of engineers, contractors, and other experts to find a satisfactory alternate to a road built within the Plat 12 Right-of-Way and to calculate the cost of such an endeavor cannot be estimated by "any accurate standard." *Id.* Of course, the tab for all of that effort and expense might simply prompt the Cowans to move or relocate the garage rather than bear that expense, should such a road ever be built.[16]

¶30    For these reasons, we are not persuaded that the district court abused its discretion in concluding that the Association has

---

16. The record is silent as to why the Existing Road, long in use, is not adequate for ingress and egress; why a road along the Plat 12 Right-of-Way would benefit the Association or its members; and what factors have prompted the Association to think in terms of building such a road in the future given that in the over thirty years since it has had the right to do just that, it has never been moved to do so. Additionally, locating a portion of the new road outside the Plat 12 Right-of-Way may be unnecessary altogether. As the Association's attorney suggested in his letter to the Cowans, another possible solution would be for the Cowans to compensate the Association for the "steps necessary to protect the garage from vehicles or from run-off," should a road within the Plat 12 Right-of-Way ever be constructed. The Association has not argued how the calculation of monetary damages for this course of action would prove unreliable. And should such a solution prove unsatisfactory to the County, the violation of the zoning ordinance would alone be sufficient for the County to obtain an injunction in its own right. *See* Utah Code Ann. § 17-27a-802(1)(b) (LexisNexis Supp. 2018) ("A county need only establish the violation [of a zoning ordinance] to obtain [an] injunction.").

not suffered irreparable injury at this point in time from the location of the Cowans' garage.

### III. Authority to Enforce the County Setback Ordinance on the County's Behalf

¶31 The Association next challenges the district court's conclusion that the Maintenance Agreement entered into by the Association and the County did not "delegat[e] authority to [the Association] to enforce a violation of the [County Setback Ordinance]." The Association argues that the Maintenance Agreement unambiguously reflects the County's intent "to assign the right and impose the obligation of enforcement [of the County Setback Ordinance] to the Association," which implicitly grants the Association the right "to construe the meaning and application of the Setback Ordinance to Timber Lakes rather than to a member of the Wasatch County planning department." And because "[a] county need only establish the violation [of a zoning ordinance] to obtain [an] injunction," Utah Code Ann. § 17-27a-802(1)(b) (LexisNexis Supp. 2018), the Association argues that "[a]s the assignee of the County, the Association inherited the same right," thereby alleviating it of the burden of making the additional showings required of private parties seeking a permanent injunction, *see Johnson v. Hermes Assocs., Ltd.*, 2005 UT 82, ¶ 13, 128 P.3d 1151. *See also id.* ¶ 18 (stating that irreparable harm is presumed when a county seeks an injunction for zoning violations).

¶32 "An assignment is a transfer of property or some other right from one person (the assignor) to another (the assignee), which confers a complete and present right in the subject matter to the assignee." *Kirton McConkie PC v. ASC Utah LLC*, 2016 UT App 200, ¶ 10, 383 P.3d 446 (quotation simplified). In determining whether an assignor–assignee relationship exists between the County and the Association, we must look to the Maintenance Agreement.

¶33  "Well-accepted rules of contract interpretation require that we examine the language of a contract to determine meaning and intent." *Glenn v. Reese*, 2009 UT 80, ¶ 10, 225 P.3d 185. "Where the language is unambiguous," as the Association contends it is, "the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law." *Id.* (quotation simplified). We "also consider each contract provision in relation to all of the others, with a view toward giving effect to all and ignoring none." *Id.* (quotation simplified).

¶34  The Maintenance Agreement provides that "[t]he Association agrees to enforce all covenants, conditions, restrictions and management policies set forth in the [CC&Rs]." And upon the Association's failure to do so, "the County may . . . cause suit to be brought against the Association for the purpose of requiring it to enforce the same or may itself bring and prosecute a suit in the name of the Association for the purpose of enforcing the [CC&Rs]."

¶35  The Association argues that because the CC&Rs require the construction of any improvements to "comply with all requirements of the federal, state and local governing authorities," including the County Setback Ordinance, "[i]t is incorrect as a matter of law to conclude that the County reserved its right to enforce the [County] Setback Ordinance in the Maintenance Agreement in such a way that it *deprived* the Association of the right to enforce the [County] Setback Ordinance." But the conclusion that the County did not assign its enforcement rights to the Association does not deprive the Association of the ability to bring suit against zoning violators. It could still do so, but it would have to make the additional showings required of individuals seeking enforcement of zoning ordinances. *See Johnson*, 2005 UT 82, ¶ 13. To be sure, it might be more efficient for the County to bring suit to enforce zoning

violations if it were so inclined, but the Association is not automatically foreclosed from doing so without an assignment.

¶36  Furthermore, the Maintenance Agreement specifically grants the County the right, with our emphasis, to "bring and prosecute a suit *in the name of the Association*" to enforce the CC&Rs, which the County otherwise would not be entitled to enforce. Although this contractual right—to bring suit "in the name of the Association"—does not rise to the level of an assignment, the Maintenance Agreement provides no reciprocal right to the Association to enforce county ordinances either in the name of the County or as an assignee of the County. To the contrary, the Maintenance Agreement provides, with our emphasis, that "[t]he County shall have the right . . . to enter upon the premises of [Timber Lakes] for inspection and *for enforcement of all applicable laws* [and] *ordinances*." But the agreement is silent as to the Association's rights and obligations with respect to "enforcement of all applicable laws [and] ordinances."

¶37  Thus, based on the plain language of the Maintenance Agreement, we cannot agree that the County intended to assign its right to enforce zoning ordinances to the Association.[17]

## CONCLUSION

¶38  The district court did not abuse its discretion in determining that the Association had not suffered irreparable

---

17. Because we conclude that the Maintenance Agreement does not create an assignor–assignee relationship between the County and the Association, we need not address the question of whether the right to enforce county ordinances is assignable to a private entity.

harm as a result of the Cowans' violation of the CC&Rs, thereby mandating denial of the injunctive relief the Association sought. And because the County did not assign its right to enforce zoning ordinances to the Association, the zoning violation alone was insufficient to entitle the Association to a permanent injunction.

¶39　　Affirmed.

———————